**No. 21-14275**

---

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

---

BETTY WADE, as PERSONAL REPRESENTATIVE
FOR THE ESTATE OF DAVID HENEGAR,

*Plaintiff-Appellant,*

v.

GEORGIA CORRECTIONAL HEALTH, LLC, *et al.,*

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of Georgia
No. 18-cv-192
Hon. Amy Totenberg, District Judge

---

**EN BANC BRIEF OF PLAINTIFF-APPELLANT**

---

Mike Kanovitz
Steve Art
Rachel Brady
Annie Prossnitz
LOEVY + LOEVY
311 N. Aberdeen St. Third Floor
Chicago, IL 60607
(312) 243-5900
brady@loevy.com

*Attorneys for Plaintiff-Appellant*

**No. 21-14275**
**Betty Wade v. Georgia Correctional Health, LLC, et al.**

<u>**CERTIFICATE OF INTERESTED PERSONS**</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, undersigned counsel for Plaintiff-Appellant certifies that the following have an interest in the outcome of this appeal:

Applebaum Henefeld & Green, P.C. – Appellee's Counsel

Brady, Rachel – Appellant's Counsel

Elgron, Inc. – Appellant's Counsel

Estate of David Henegar – Appellant

Georgia Office of the Attorney General – Appellees' Counsel

Greenamyre, Zack – Plaintiff's Counsel

Henefeld, Paul – Appellee's Counsel

Henegar, David Jacob – Beneficiary of Estate of David Henegar

Kanovitz, Mike – Appellant's Counsel

Loevy & Loevy – Appellant's Counsel

Lones, Laura – Appellees' Counsel

Mitchell & Shapiro, LLP – Plaintiff's Counsel

Murphy, Harold – United States District Judge

Totenberg, Amy – United States District Judge

Wade, Betty – Appellant/Personal Representative of the Forthcoming Estate of David Henegar

## **CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, undersigned counsel for Plaintiff-Appellant certifies that none of the above-listed entities are publicly traded, and no publicly traded entity owns 10% or more of their stock.

## STATEMENT REGARDING ORAL ARGUMENT

This case has been set for oral argument during the week of February 13, 2024. This Court would benefit from oral argument because this case concerns an exceptionally important and frequently arising question of constitutional interpretation.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ...............................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................... i

TABLE OF CONTENTS....................................................................... ii

TABLE OF CITATIONS ......................................................................v

JURISDICTIONAL STATEMENT ....................................................... xi

STATEMENT OF THE ISSUES..............................................................1

STATEMENT OF THE CASE..................................................................2

I.     Defendants Knew of Mr. Henegar's Need for Medication
       and the Risk That Without It He Would Suffer Seizures but
       Deprived Him of His Medication ................................................2

       A.     The Parties Agree on Many of the Material Facts ...............3

       B.     Mr. Henegar Repeatedly Requested His Prescription Seizure
              Medication from Defendants Stroh and Keith but They Did Not
              Provide It ..........................................................................4

       C.     Defendants-Appellees Lee and Harrell Knew
              Mr. Henegar Needed His Medication but Did Nothing.......................6

II.    As A Result of Defendants' Denial of Medication,
       Mr. Henegar Suffered Serious Seizures and Brain Damage ..........................8

III.   The District Court Grants Summary Judgment and the Panel Affirms..........9

SUMMARY OF THE ARGUMENT ....................................................12

ARGUMENT ......................................................................................................14

I.   The Supreme Court Has Dictated a Criminal Recklessness
     Mental State Requirement for Eighth Amendment Deliberate
     Indifference Claims, and This Court Must Apply It .....................................14

     A.   In *Farmer v. Brennan*, the Supreme Court Defines Deliberate
          Indifference as Disregard of a Known Substantial Risk....................15

     B.   The Supreme Court Has Consistently Upheld *Farmer*'s
          Mental State Requirement...................................................................17

II.  This Court Has Faithfully Applied *Farmer's* Recklessness
     Standard for Decades ....................................................................................18

III. All Other Courts of Appeals Have Applied *Farmer*'s
     Recklessness Standard Uniformly ................................................................20

IV.  Of the Four States of Mind Available in Constitutional Claims,
     the Supreme Court Says that Criminal Recklessness Governs Eighth
     Amendment Claims ......................................................................................22

     A.   Only Four Mental States Govern All Constitutional Claims.............22

     B.   The Supreme Court Has Settled on Criminal
          Recklessness in This Context.............................................................25

V.   This Court's Recent Decisions Have Imposed the Wrong
     Mental State Requirement ............................................................................26

     A.   This Court Should Not Use a Negligence Standard............................27

     B.   This Court Should Not Use a Gross Negligence Standard .................29

     C.   Other Heightened Mental State Requirements
          Should Not Be Used............................................................................32

D.    The Original Understanding of the Eighth Amendment
       Does Not Require Intentional Conduct ...............................................34

VI.   Construing the Record in the Plaintiff's Favor,
       Defendants Acted with Deliberate Indifference ............................................37

A.    A Jury Could Find That Custody Defendants Stroh and
       Keith Knew of and Disregarded the Substantial Risk of
       Serious Harm to Mr. Henegar ............................................................38

B.    A Jury Could Find That Nurse Defendants Lee and Harrell Were
       Aware Mr. Henegar Faced a Substantial Risk of Serious Harm but
       Did Nothing .........................................................................................40

CONCLUSION .................................................................................................42

# TABLE OF CITATIONS

**Cases**

*Adams v. Poag*,
　61 F.3d 1537 (11th Cir. 1995)...............................................................2

*Archie v. City of Racine*,
　847 F.2d 1211 (7th Cir. 1988)......................................................30, 31

*Baze v. Rees*,
　553 U.S. 35 (2008) ...............................................................................34

*Benson v. Gordon County, Ga.*,
　479 F. App'x 315 (11th Cir. 2012) ...............................................39, 01

*Bernier v. Allen*,
　38 F.4th 1145 (D.C. Cir. 2022) ..........................................................21

*Borden v. United States*,
　*Bozeman v. Orum*, 422 F.3d 1265 (11th Cir. 2005).....................23, 24

*Brock v. Wright*,
　315 F.3d 158 (2d Cir. 2003)................................................................35

*Brown v. Hughes*,
　894 F.2d 1533 (11th Cir. 1990)..........................................................38

*Campbell v. Sikes*,
　169 F.3d 1353 (11th Cir. 1999)..........................................................20

*Carswell v. Bay County*,
　854 F.2d 454 (11th Cir. 1988)......................................................39, 40

*Clark v. Coupe*,
　55 F.4th 167 (3d Cir. 2022)................................................................21

*Corby v. Conboy*,
　457 F.2d 251 (2d Cir. 1972)...............................................................16

*Corporación AIC, SA v. Hidroeléctrica Santa Rita S.A.*,
    66 F.4th 876 (11th Cir. 2023)................................................................29

*Cottrell v. Caldwell*,
    85 F.3d 1480 (11th Cir. 1996)..........................................................19

*Counterman v. Colorado*
    600 U.S. 66 (2023) ............................................................22, 23, 24

*Dukes v. Deaton*,
    852 F.3d 1035 (11th Cir. 2017)..........................................................29

*Duncan v. Corr. Med. Servs.*,
    451 F. App'x 901 (11th Cir. 2012) .....................................................40

*Edwards v. Quiros*,
    986 F.3d 187 (2d Cir. 2021)..............................................................20

*\*Estelle v. Gamble*,
    429 U.S. 97 (1976) .......................................................................*passim*

*\*Farmer v. Brennan*,
    511 U.S. 825 (1994) .....................................................................*passim*

*Gittlemacker v. Prasse*,
    428 F.2d 1 (3d Cir. 1970)..................................................................33

*Glossip v. Gross*,
    576 U.S. 863 (2015) ........................................................................34

*Goodman v. Kimbrough*,
    718 F.3d 1325 (11th Cir. 2013)....................................................32, 33

*Hampton v. California*,
    83 F.4th 754 (9th Cir. 2023)..............................................................21

*Haney v. City of Cumming*,
    69 F.3d 1098 (11th Cir. 1995)..........................................................19

*Hardin v. Hayes*,
    52 F.3d 934 (11th Cir. 1995)...............................................................19

*Harris v. Thigpen*,
    941 F.2d 1495 (11th Cir. 1991).........................................................33

*Hill v. Dekalb Reg'l Youth Det. Ctr.*,
    40 F.3d 1176 (11th Cir. 1994)...........................................................19

*Hoffer v. Secretary Florida Dep't of Corrs.*,
    973 F.3d 1263 (11th Cir. 2020)..........................................................33

*Hodges v. Dep't of Corrs.*,
    61 F.4th 588 (8th Cir. 2023).............................................................21

*Howell v. Evans*,
    922 F.2d 712, 719 (11th Cir. 1991).....................................................2

*Jett v. Penner*,
    439 F.3d 1091 (9th Cir. 2006)...........................................................28

*Johnson v. Prentice*,
    601 U.S. --- , 2023 WL 7475168 (Mem) (Nov. 13, 2023).................18

*Jones v. Smith*,
    786 F.2d 1011 (11th Cir. 1986).........................................................15

*Lancaster v. Monroe County, Ala.*,
    116 F.3d 1419 (11th Cir. 1997).........................................................19

*Langford v. Joyner*,
    62 F.4th 122 (4th Cir. 2023)............................................................21

*Leite v. Bergeron*,
    911 F.3d 47 (1st Cir. 2018) .............................................................20

*Martinez v. Mancusi*,
    443 F.2d 921 (2d Cir. 1970).............................................................16

*Mathis v. United States*,
    579 U.S. 500 (2016) .............................................................15

*McElligott v. Foley*,
    182 F.3d 1248 (11th Cir. 1999)...............................27, 30, 38

*Miller v. King*,
    384 F.3d 1248 (11th Cir. 2004)...................................29, 30

*Miller v. King*,
    449 F.3d 1149 (11th Cir. 2006)...................................29, 30

*Milwaukee & St. P.R. Co. v. Arms*,
    91 U.S. 489 (1875) .............................................................30

*Newman v. State of Alabama*,
    503 F.2d 1320 (5th Cir. 1974 .............................................16

*Ortiz v. Jordan*,
    562 U.S. 180 (2011) .............................................................18

*Paugh v. Uintah County*,
    47 F.4th 1139 (10th Cir. 2022)...........................................21

*Peterson v. Wexford Health Sources, Inc.*,
    986 F.3d 746 (7th Cir. 2021) ..............................................21

*Pinkston v. Kuiper*,
    67 F.4th 237 (5th Cir. 2023)...............................................28

*Porter v. Nussle*,
    534 U.S. 516 (2002) .....................................................17, 18

*Qamar v. C.I.A.*,
    489 F. App'x 393 (11th Cir. 2012) ....................................40

*Reedy v. West*,
    988 F.3d 907 (6th Cir. 2021)..............................................21

*Smith v. Wood*,
  No. 20-12918, 2021 WL 4452526 (11th Cir. Sept. 29, 2021) ............28

*Sparks v. Ingle*,
  724 F. App'x 692 (11th Cir. 2018) ...............................................39, 40

*Steele v. Shah*,
  87 F.3d 1266 (11th Cir. 1996) *as amended* (Sept. 6, 1996)...............19

*Taylor v. Barkes*,
  575 U.S. 822 (2015) ...............................................................................18

*Thompson v. Texas Dep't of Crim. Justice*,
  67 F.4th 275 (5th Cir. 2023)................................................................21

*United States v. Bailey*,
  444 U.S. 394 (1980) ...............................................................................23

*United States v. Johnson*,
  921 F.3d 991 (11th Cir. 2019) (en banc)............................................14

*Voisine v. United States*,
  579 U.S. 686 (2016) ..............................................................23, 24, 26

*Wade v. McDade*,
  No. 21-14275, slip op. ("Op.")........................................................... xii

*Waldrop v. Evans*,
  871 F.2d 1030 (11th Cir. 1989)............................................................39

*Williams v. Vincent*,
  508 F.2d 541 (2d Cir. 1974)................................................................ 6

*\*Wilson v. Seiter*,
  501 U.S. 294 (1991) .......................................................15, 17, 26, 30

## Constitutional Provisions

U.S. Const. amend. VIII ...........................................................................14, 34

**Statutes**

Model Penal Code, § 2.02 ........................................................................16, 22

Restatement (Second) of Torts § 500 (1965) ....................................22, 23, 24

42 U.S.C. § 1983...............................................................................*passim*

28 U.S.C. § 1331................................................................................xi

28 U.S.C. § 1291................................................................................ xii

**Rules**

11th Circuit Rule 35-2 ...................................................................... xii

**Other Authorities**

John F. Stinneford, *The Original Meaning of "Cruel,"*
    105 Geo. L.J. 441, 493 (2017).......................................................35, 36

Olga Voinarevich, *An Overview of the Grossly
Inconsistent Definitions of "Gross Negligence" in
American Jurisprudence*,
    48 J. MARSHALL L. REV. 471 (2015)....................................................31

*Prosser and Keeton on The Law of Torts*
    (W. Page Keeton et al. eds., 5th ed. 1984)....................................*passim*

Scott Rauser, Comment, *Prisons are Dangerous Places:
Criminal Recklessness as the Eighth Amendment Standard
Of Liability in* McGill v. Duckworth,
    U. MINN. L. REV. 165 (1991)...............................................................26

*Eleventh Circuit Pattern Jury Instructions* 5.8 (2022).................................20

## JURISDICTIONAL STATEMENT

David Henegar filed this suit under 42 U.S.C. § 1983, alleging among other things that his Eighth Amendment rights were violated. As relevant here, Mr. Henegar contends that four of the Defendants-Appellees—correctional officers John Stroh, Jerome Scott Keith, and correctional nurses Sherri Lee, and Julie Harrell—were deliberately indifferent to his serious medical needs when they knowingly denied him necessary treatment for his seizures over a period of four days while he was incarcerated at Georgia's Walker State Prison. Doc. 84. The District Court had jurisdiction pursuant to 28 U.S.C. § 1331.[1]

On September 30, 2021, the district court granted Defendants-Appellees' motions for summary judgment, entering a final judgment in their favor. Doc. 169, 170.[2] On October 16, 2021, Mr. Henegar died. Doc. 172. On October 28, 2021, the

---

[1] Plaintiff brought additional claims that are no longer before the Court. Specifically, he brought federal and state claims against Georgia Correctional Health, LLC, Augusta University, Augusta University Medical Center, Inc., Augusta University Health, Bill Nichols, Sharon Lewis, Charles Burke, Pamela Ballinger, CHI Memorial, John Owensby, Carrie Pritchett, Megan Arthur, and the State of Georgia. At the motion-to-dismiss stage, the district court dismissed all of the state claims, and it dismissed all Defendants except McDade, Lee, Melton, Stroh, and Keith. Doc. 68, PP. 90-92. The only claims that survived the motion to dismiss were Mr. Henegar's Section 1983 claims against Defendants McDade, Lee, Melton, Stroh, and Keith for deliberate indifference under the Eighth Amendment. *Id.* Plaintiff was later granted leave to amend his complaint to add Defendant Harrell on those claims. Doc. 83, 84.

[2] Mr. Henegar did not oppose Defendant Melton's motion for summary, which the district court granted, and which Plaintiff-Appellant does not appeal.

district court extended the time to file the notice of appeal to November 29, 2021, pursuant to Federal Rule of Appellate Procedure 4(a)(5). Doc. 171.

On November 29, 2021, Plaintiff-Appellant, the putative personal representative of Mr. Henegar's estate, timely filed a notice of appeal of the district court's order granting summary judgment to Stroh, Keith, Lee, Harrell, and McDade on Mr. Henegar's Eighth Amendment claims. Doc. 173. This Court's jurisdiction is based on 28 U.S.C. § 1291.

On March 1, 2022, this Court formally substituted Betty Wade, the appointed personal representative of Mr. Henegar's estate, as the Plaintiff-Appellant. App. Doc. 20.

On appeal, Plaintiff-Appellant challenges only the district court's grant of summary judgment to Stroh, Keith, Lee, Harrell, and McDade on Mr. Henegar's Eighth Amendment claim that they were deliberately indifferent to his need for medication.

A panel of this Court issued an opinion affirming the district court on May 22, 2023. *Wade v. McDade*, No. 21-14275, slip op. ("Op."). Plaintiff timely filed her petition for rehearing and rehearing en banc on June 12, 2023. App. Doc. 52; 11th Cir. R. 35-2. This Court granted Plaintiff's petition for rehearing en banc on October 11, 2023. App. Doc. 54-1.

Plaintiff-Appellant is no longer pursuing his appeal against Defendant-Appellee McDade before the en banc Court.

**STATEMENT OF THE ISSUES**

Whether liability under 42 U.S.C. § 1983 for an Eighth Amendment deliberate indifference claim is established by showing that the prison official knew that an inmate faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to address it—a subjective recklessness standard—as the Supreme Court dictated in *Farmer v. Brennan*, 551 U.S. 825 (1994), and its progeny, as this Court has decided repeatedly, and as the federal circuits have held unanimously.

## STATEMENT OF THE CASE

This Court reviews *de novo* the district court's decision granting summary judgment to Defendants-Appellees, construing the summary judgment record in Mr. Henegar's favor and drawing all reasonable inferences for him. *Howell v. Evans*, 922 F.2d 712, 719 (11th Cir. 1991); *Adams v. Poag*, 61 F.3d 1537, 1542 (11th Cir. 1995). The following statement presents the evidence in the light most favorable to Mr. Henegar.

## I.    Defendants Knew of Mr. Henegar's Need for Medication and the Risk That Without It He Would Suffer Seizures but Deprived Him of His Medication

David Henegar was a prison at Walker State Prison in Georgia in August 2016 when his interactions with Defendants-Appellees took place. Doc. 168, P. 1. [3] For four days in August 2016, Defendants deprived Mr. Henegar of his prescription seizure medication, Dilantin, despite that he repeatedly asked for it, and despite that a supply was readily available at the prison. Each Defendant was aware that a doctor had prescribed this medication for Mr. Henegar, that Mr. Henegar needed it to prevent seizures, that he was not receiving it, and that going without it could endanger his life. But rather than take any one of a number

---

[3] All citations to the record rely on the page number generated in the CM/ECF caption in the header of each page.

of reasonable measures available to help Mr. Henegar, Defendants ignored him. As a result, Mr. Henegar suffered two serious seizures and permanent brain damage.

### A.    The Parties Agree on Many of the Material Facts

Many of the material facts are not disputed. Doc. 168, PP. 1-11. All parties agree on the following facts: Mr. Henegar suffered from a seizure disorder. Doc. 147-2, P. 2; Doc. 168, P. 1. Defendants knew Mr. Henegar had been prescribed Dilantin by a doctor at the prison and needed that medication to control his seizures, which without medication could threaten his health and his life. Doc. 168, PP. 1, 17; Doc. 147-2, P. 14; Doc. 147-4, PP. 129-30, 137 (Harrell); Doc. 147-5, PP. 114, 137-38, 141-42, 148, 153, 196-97, 245 (Keith); Doc. 147-8, PP. 126 (Lee); Doc. 147-15, PP. 166-67 (Stroh). Unmedicated seizures are an objectively serious medical condition. Doc. 168, P. 17. Mr. Henegar went without his Dilantin medication for four days in August 2016, Doc. 147-2, PP. 14-15, but repeatedly asked for his Dilantin during that period of time, Doc. 168, PP. 4-5. Defendant Keith knew Mr. Henegar had gone four days without his Dilantin. Doc. 159-2, P. 16. Walker State Prison kept an extra supply of Dilantin in the medical department's standard ward inventory for use when prisoners' supplies ran out. Doc. 147-4, P. 122-23; Doc. 148-5 PP. 29-30, 117-18; Doc. 159-2, P. 18. Any nurse could access this supply, and a quick call from any corrections officer would alert the nursing staff that they needed to do so. Doc. 147-5, PP. 137-38, 148; Doc.

3

155-7, P. 6. Nurse Defendants Lee and Harrell took no steps to procure Mr. Henegar a dose of Dilantin while his supply was missing. Doc. 168, PP. 17, 22. And finally, as the result of the four-day deprivation of Dilantin, Mr. Henegar suffered from seizures and brain damage. Doc. 168, P. 17.

The parties dispute only two questions relevant to determining whether the Defendants-Appellees were deliberately indifferent to Mr. Henegar's medical condition: (1) whether Stroh and Keith disregarded the risk of harm that Mr. Henegar faced as a result of not receiving his Dilantin by failing to take reasonable steps to address the problem; and (2) whether Lee and Harrell knew that Mr. Henegar was not receiving his Dilantin and was at risk of harm.

### B. Mr. Henegar Repeatedly Requested His Prescription Seizure Medication from Defendants Stroh and Keith but They Did Not Provide It

Mr. Henegar went to his assigned 9:00 p.m. pill call on August 28, as he did every day, to receive his Dilantin. Doc. 147-5, PP. 81, 90, 94, 137; Doc 147-15, PP. 16, 72, 151-53. There were no medical personnel onsite at night, so Defendants Stroh and Keith were responsible for distributing medication at that time and addressing any problems that arose. Doc. 147-5, PP. 109-10; Doc. 147-8, PP. 136,

170, 171; Doc. 147-15, P. 112. Doc. 147-4, P. 218; Doc. 147-5, PP. 81, 90, 94, 112, 128-29, 137; Doc. 147-15, PP. 16, 72, 151-53.

Mr. Henegar's Dilantin was not on the pill cart that night, so Keith made an undesignated and unidentifiable marking in Mr. Henegar's medication administration record ("MAR") to record that Mr. Henegar had come to pill call but had not received his medication, and sent Mr. Henegar on his way. Doc. 155-10, P. 2; Doc. 159-2, PP. 13, 16. Keith and Stroh did nothing else. [4]

Mr. Henegar went to his assigned pill call the next two days, but his Dilantin still was not there. Doc. 129, P. 15. The corrections officer conducting the pill call wrote a "question mark" in Mr. Henegar's MAR for those two days, which signified to anyone who looked at it that there was a problem with his medication that required follow-up. Doc. 147-4, PP. 209, 273-274; Doc. 148-5, P. 266; Doc. 155-10.

When Mr. Henegar went to see Defendants Stroh and Keith at pill call on August 31, they learned that he was on his fourth day without Dilantin, Doc. 147-5, PP. 137-138; Doc. 147-15, PP. 16, 155; Doc. 155-7, PP. 6-7—and thus that the system of writing "question marks" was not working. Stroh and Keith

---

[4] The Defendants dispute between each other whether Keith also notified a nurse about the missing medication: Keith says he told a nurse but did not remember who, Doc. 147-5, P. 145, and the nurses deny that Keith told them anything, Doc. 147-3, P. 2; Doc. 147-7, P. 2.

acknowledge that Mr. Henegar's unmedicated seizure disorder posed a serious

health risk. Doc. 147-5, PP. 126-29, 132-33, 141-42, 153 (Keith); Doc. 147-15, PP.

102, 165-67 (Stroh). And they had in fact been trained to call the on-call nurse

immediately when a problem with a prisoner's medication arose, consistent with

standard practice in correctional medicine. Doc. 148-3, P. 4; Doc. 148-5, PP. 35-

36, 37, 88; Doc. 147-15, P. 101; Doc. 147-5, PP. 125-128, 131-132. Yet they did

nothing except write another consecutive question mark in the MAR and tell

Mr. Henegar to go to the sick bay in the morning. Doc. 147-5, PP. 137-138; Doc.

147-15, PP. 16, 155; Doc. 148-5, PP. 36-38, 89; Doc. 147-4, PP. 168-169; Doc.

148-3, PP. 4-5.

### C.    Defendants-Appellees Lee and Harrell Knew Mr. Henegar Needed His Medication but Did Nothing

The panel concluded that Defendants Lee and Harrell were aware that

Mr. Henegar was missing his medication, that they were aware that he faced a

serious risk of harm without it, and that they disregarded that risk. Op. at 21-25.

There is ample evidence supporting this conclusion as to each nurse. Construing

the record in Plaintiff's favor, Keith told Lee directly that Mr. Henegar's

medication was gone,[5] and in the normal course of their duties conducting pill

_____

[5] At summary judgment Defendants-Appellees tried to muddy the issue by arguing that Keith might have told Defendant Harrell instead. This would have been impossible. The only nurse whom Keith could have told was Lee, since she was the only nurse he overlapped with at a point when he knew the medication was

calls, reviewing MARs first thing in the morning to check for issues that arose

while no medical staff were present, inventorying the pill cart, and tracking

medication supplies, both nurses would have seen at least one of the many

warnings informing them that there was a problem with Mr. Henegar's medication,

such as the warning post-it note that stuck out like a flag, the chain of question

marks in the MAR, the records showing the medication had not been delivered,

and the absence of medication itself. Lee: Doc. 147-5, P. 132; Doc. 147-12, PP.

156-162; Doc. 147-4, P. 212. Harrell: Doc. 147-4, PP. 88-89, 117, 125, 157; Doc.

147-8, P. 58; Doc. 147-12, PP. 106, 108; Doc. 148-5, PP. 165, 167-68, 255-257,

267, 280.

　　　Yet it is undisputed that neither nurse took any measures to obtain

Mr. Henegar a dose of medicine from the standard inventory or otherwise take any

step to get him a dose. Doc. 147-4, P. 123; Doc. 148-5, P. 29-30, 117-118. They

instead disregarded the risk of Mr. Henegar suffering a seizure entirely and did

nothing. Doc. 155-3, PP. 7-11, 15-16.

---

missing. Though Keith overlapped with Harrell once during this period when he
arrived at work on August 31, Keith could not have known at that time that
Mr. Henegar's medication was still out. *See* Doc. 147-4, P. 36-37; Doc. 147-6;
Doc. 147-8, P. 201; Doc. 147-10.

## II.    As A Result of Defendants' Denial of Medication, Mr. Henegar Suffered Serious Seizures and Brain Damage

After Defendants ignored his pleas for four days, Mr. Henegar suffered two massive seizures resulting from the denial of medication. Doc. 147-5, PP. 157-159; Doc. 155-5, P. 3; Doc. 155-11, P. 3; Doc. 155-12, P. 3; Doc. 155-14, P. 3. During the first, he experienced status epilepticus and convulsed for nearly 20 minutes. Doc. 147-5, PP. 57-59; Doc. 155-5, P. 3; Doc. 155-11, P. 3. His eyes rolled back in his head and he foamed at the mouth. Doc. 155-5, P. 3; Doc. 155-11, P. 3. He convulsed so violently that his entire bed shook. *Id*. This seizure was so prolonged and severe that it caused permanent brain damage. Doc. 147-5, PP. 57-59; Doc. 148-7, PP. 29-31; Doc. 155-5, P. 3; Doc. 155-11, P. 3; Doc. 155-15, PP. 3, 5-6. The length and severity of this seizure caused damage to Mr. Henegar's hippocampus, including permanently destroying and scarring his brain cells. Doc. 155-15, P. 4. This damage manifests as memory loss and difficulty with mood regulation, including difficulty forming new memories and unexplained anger. Doc. 155-15, P. 4.

Mr. Henegar was eventually sent to the emergency room, but he was discharged back to the prison shortly thereafter and suffered another serious seizure that left him oxygen deprived for nearly 30 minutes. Doc. 147-9; Doc. 147-15, P. 224; Doc. 155-13, P. 7.

8

The brain damage destroyed Mr. Henegar's remaining years. The seizures caused permanent short-term memory impairment and prolonged difficulty regulating his emotions. He was plagued by fits of anger and despair. Doc. 148-4, P. 177; Doc. 155-8, P. 2; Doc 155-11, P. 4; Doc. 155-15, P. 5; Doc. 155-16, P. 2. His once well-controlled epilepsy also became uncontrollable, even with medication. Doc. 155-15, PP. 5-6. After his release from prison, he could no longer hold down a job in his field (welding) and the relationships he enjoyed before the brain damage became strained and faded away. Doc. 148-4, PP. 26, 103. He survived day-to-day only by writing down in a journal every interaction and event lest he forget. Doc. 148-4, PP. 27-28, 82-83, 88, 95-96.

Mr. Henegar did not have to spend the final years of his life in such a miserable state. The brain damage and the seizures that caused it were entirely preventable. Until being deprived of his medication for four straight days, Mr. Henegar's seizure disorder was well-controlled. Doc. 155-15, P. 5. He had been on a consistent regimen of seizure medication since his diagnosis with a seizure disorder in 2015 and had not had a single seizure since starting prescribed anticonvulsants. Doc 148-4, PP. 138-139; Doc. 155-15, P. 5.

## III.    The District Court Grants Summary Judgment and the Panel Affirms

Mr. Henegar filed this Section 1983 lawsuit, alleging that Defendants-Appellees were deliberately indifferent to his serious medical needs, in violation of

9

the Eighth Amendment, because they knew for four days that Mr. Henegar had an unmedicated seizure condition that presented a serious risk of harm but took no steps to get him Dilantin from a readily available source. Doc. 129.

After discovery, the district court granted Defendants' motions for summary judgment. Doc. 168. The district court held that to make out an Eighth Amendment violation Mr. Henegar had to show that the Defendants-Appellees had acted with "more than gross negligence." *Id.*, P. 19. The district court found that Defendants-Appellees had acted with gross negligence but nothing more. Doc. 168, P. 31. Ultimately, the court concluded that, even assuming Defendants-Appellees' conduct amounted to deliberate indifference, the law in 2016 did not clearly establish that their conduct was unconstitutional, and they were therefore entitled to qualified immunity. Doc. 168, PP. 20, 23, 31.

A panel of this Court affirmed. Op. at 3. After reviewing this Court's inconsistent statements about what mental state governs Eighth Amendment deliberate indifference claims, the panel decided that to be liable for deliberate indifference, the defendants had to be "more than grossly negligent," without defining that mental state requirement further. *Id.* at 14-15, 19. Although the panel concluded that the summary judgment record construed for Mr. Henegar established that a jury could find that at least Defendants Lee and Harrell knew that Mr. Henegar lacked his medication, faced a serious risk, and disregarded that risk

10

by failing to take reasonable measures, it concluded that this conduct was not "more than grossly negligent," *id.* at 21, 23. Accordingly, the panel held that Mr. Henegar's Eighth Amendment rights had not been violated.

This Court granted Plaintiff-Appellant's petition for rehearing en banc, ordering the parties to focus their en banc briefing on the question: "What is the standard for establishing liability on an Eighth Amendment deliberate-indifference claim?" App. Doc. 54-1; App. Doc. 57.[6]

---

[6] This brief does not address qualified immunity. The district court applied a "more than gross negligence" mental state requirement to Mr. Henegar's deliberate indifference claims, concluded that standard was not met, and decided that the law was not clearly established. Doc. 168, P. 19-32. The panel opinion applied the same mental state requirement, decided that it had not been met, but made no reference to whether the law was clearly established. Op. at 20, 21, 25. The en banc Court has asked the parties to brief what standard establishes liability for an Eighth Amendment deliberate indifference claim, without asking for briefing on qualified immunity. App. Doc. 57.

As this brief argues, the "more than gross negligence" standard applied by the panel and the district court is incorrect. As a result, no court in this case has yet examined whether Mr. Henegar's rights were violated under the correct legal standard. For that reason, and because the en banc Court has not requested briefing on the qualified immunity, Plaintiff-Appellant does not address whether the law was clearly established. That question is best addressed by the district court on remand in the first instance, after this Court sets out the appropriate mental state requirement in this appeal.

## SUMMARY OF THE ARGUMENT

This appeal concerns the mental state standard necessary to establish liability on an Eighth Amendment deliberate indifference claim. That standard is clear. The Supreme Court holds that to establish liability for such a claim, a prison official must know that an inmate faces a substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). This is a criminal recklessness standard. *Id.* at 839-40. A prison official's subjective awareness of a risk of harm can be demonstrated by direct or circumstantial evidence. *Id.* at 842. The Supreme Court has not deviated from this mental state requirement, and this Court is bound to apply it.

For years, this Court applied *Farmer*'s recklessness mental state requirement faithfully, consistent with all of its sister circuits. But in recent years this Court has tangled that correct mental state requirement from *Farmer* with incorrect and additional legal tests, adding negligence as an element of the deliberate indifference analysis; debating whether the requisite mental state is "more than mere negligence" or "more than gross negligence"; and in some cases suggesting that something akin to intent to inflict harm is necessary to establish liability for Eighth Amendment deliberate indifference.

12

This Court's recent cases have put it in conflict with Supreme Court precedent and have made it an outlier among its sister circuits. The Supreme Court reiterated recently there are only four possible mental states to pick from in constitutional inquiries—purpose, knowledge, recklessness, and negligence. In *Farmer*, the Court explained that subjective recklessness was necessary to establish liability for deliberate indifference, and it expressly rejected negligence, knowledge, and purpose as applicable mental states in this context. As a result, this Court's recent references to negligence, gross negligence, and intent all get the mental state wrong. Moreover, there is no reason to elaborate on the Supreme Court's recklessness requirement, which represents a complete description of what a plaintiff must prove about a prison official's mental state. Adding other elements, tests, or descriptions to that mental state requirement is at best confusing and at worst misstates the law.

This Court should return to the standard dictated by the Supreme Court in *Farmer*: A prisoner establishes deliberate indifference by showing that a prison official knew that an inmate faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.

13

## ARGUMENT

I.    **The Supreme Court Has Dictated a Criminal Recklessness Mental State Requirement for Eighth Amendment Deliberate Indifference Claims, and This Court Must Apply It**

The Eighth Amendment proscribes cruel and unusual punishments. U.S. CONST. AMEND. VIII. Applied in the context of prisoner medical care cases, the Supreme Court holds that the Eighth Amendment prohibits prison officials' deliberate indifference to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In *Farmer v. Brennan*, the Court unambiguously set out the mental state requirement that must be satisfied to render a state official liable for deliberate indifference under the Eighth Amendment: A state official is liable when she or he "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). In the three decades since, the Supreme Court has consistently applied, and never deviated from, *Farmer*'s definition of deliberate indifference.

This Court cannot impose any additional mental state requirement nor any lesser mental state requirement than that established by the Supreme Court. That is because appellate courts "must apply Supreme Court precedent neither narrowly nor liberally—only faithfully." *United States v. Johnson*, 921 F.3d 991, 1001 (11th Cir. 2019) (en banc). "[A] good rule of thumb for reading [Supreme Court]

14

decisions is that what they say and what they mean are one and the same." *Mathis v. United States*, 579 U.S. 500, 514 (2016). And "[w]hen the Supreme Court speaks, [this Court is] bound to listen." *Jones v. Smith*, 786 F.2d 1011, 1013 (11th Cir. 1986) (Johnson, J., dissenting).

### A.    In *Farmer v. Brennan*, the Supreme Court Defines Deliberate Indifference as Disregard of a Known Substantial Risk

In *Farmer*, the Court recognized both an objective and a subjective component to an Eighth Amendment violation. 511 U.S. at 847. First, the harm at issue must be "objectively sufficiently serious," meaning that it deprives a prisoner of "the minimal civilized measure of life's necessities." *Id.* at 834 (internal quotation marks and citation omitted). Second, as for the subjective component, a prison official violates the Eighth Amendment if he is "deliberately indifferent" to the risk of serious harm. *Id.* at 829. The Court imported the term "deliberate indifference" from *Estelle*, 429 U.S. at 104, where it was first used to describe the requisite mental state for Eighth Amendment liability in a prisoner medical care case. The *Estelle* Court had distinguished deliberate indifference from medical malpractice, reasoning that medical malpractice does not amount to a constitutional violation simply because the victim is a prisoner, but did not define the term further. *Id.* at 106; *see also Wilson v. Seiter*, 501 U.S. 294, 305 (1991) (holding that

15

deliberate indifference applies to conditions of confinement as well as medical

needs, and that it is more than "mere negligence," but not further defining it).[7]

Because the "term does not speak with certainty" and lies "somewhere

between the poles of negligence" and "purpose or knowledge," the *Farmer* Court

set out to define "deliberate indifference." 511 U.S. at 836, 840. Drawing upon the

Model Penal Code, the Court adopted criminal recklessness as the appropriate

mental state for deliberate indifference. *Id.* at 837. Criminal recklessness, the Court

explained, exists when a person "'consciously disregards' a substantial risk of

serious harm." *Id.* at 839 (quoting Model Penal Code § 2.02(2)(c) (alteration

omitted)). The Court adopted the criminal recklessness standard because it thought

prison officials should be subjectively aware of a risk of harm to be culpable of

violating an Amendment that prohibits punishment.

---

[7] The term "deliberate indifference" originated in circuit court opinions on the required mental state in prison medical care cases. In the early 1970's, the Second Circuit began using the term to describe prison officials who were liable under the Eighth Amendment for failing to medically treat prisoners. *See Martinez v. Mancusi*, 443 F.2d 921, 924 (2d Cir. 1970); *Corby v. Conboy*, 457 F.2d 251, 253 (2d Cir. 1972); *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974). And while some circuits decried the "various catch-phrases" regarding the appropriate mental standard to find prison officials liable, the majority of circuits also opted for "deliberate indifference." *See, respectively*, *Newman v. State of Alabama*, 503 F.2d 1320, 1330 n.14 (5th Cir. 1974); *Estelle*, 429 U.S. at 106 n.14 (rounding up circuit court cases that used "deliberate indifference" or similar terminology). Despite the variation in language, the circuits agreed, as did *Estelle*, that the appropriate mental state for such cases was more than negligence but less than intent.

16

To be sure, *Estelle*, *Wilson*, and *Farmer*, cast aside "negligence" as a level of culpability lower than that necessary to establish deliberate indifference, before defining deliberate indifference as subjective recklessness. *See, respectively*, 429 U.S. at 111; 501 U.S. at 305; 511 U.S. at 835. (The Supreme Court likewise expressly rejected an interpretation of deliberate indifference as "gross negligence." *Farmer*, 511 U.S. at 836 n.4.) And the Supreme Court also cast aside purpose or knowledge as too high a mental state to satisfy the Eighth Amendment. *Farmer*, 511 U.S. at 836-37; *Porter v. Nussle*, 534 U.S. 516, 528 (2002).

Having settled the meaning of deliberate indifference, the *Farmer* Court set out a simple test for liability under the Eighth Amendment: the official must know of an excessive risk to inmate health or safety and must disregard that risk by failing to take reasonable measures. The Court cautioned that this holding was not an invitation to further parse the zone "between ignorance of obvious risks and actual knowledge of risks." *Id.* at 842 (internal quotation marks and citation omitted). It emphasized, instead, that a prison official's subjective awareness of a risk is a fact-bound inquiry, which can be established "in the usual ways, including inference from circumstantial evidence." *Id.*

### B.    The Supreme Court Has Consistently Upheld *Farmer*'s Mental State Requirement

The Supreme Court has repeatedly reaffirmed the recklessness mental state requirement for Eighth Amendment deliberate indifference claims in the decades

since *Farmer* was decided. *See Taylor v. Barkes*, 575 U.S. 822, 827 (2015)

("Eighth Amendment liability requires actual awareness of risk"); *Ortiz v. Jordan*,

562 U.S. 180, 190 (2011) (a "prison official may be held liable for 'deliberate

indifference' to a prisoner's Eighth Amendment right to protection…if the official

'knows that the inmate faces a substantial risk of serious harm and disregards that

risk'") (quoting *Farmer*, 511 U.S. at 834, 847) (alterations accepted); *Porter*, 534

U.S. at 528 (calling deliberate indifference's recklessness standard a "lesser *mens

rea* requirement governing conditions of confinement claims" and distinguishing it

from the heightened requirement to show "purposeful or knowing" conduct in

other contexts) (internal quotation marks and citation omitted). Most recently,

Justice Sotomayor described the mental state requirement in *Farmer*'s as "well

established" and "long explained." *Johnson v. Prentice*, 601 U.S. —, 2023 WL

7475168, at *3 (Mem) (Nov. 13, 2023) (dissenting from denial of certiorari). The

Supreme Court has thus spoken clearly and consistently about the meaning of

deliberate indifference since *Farmer*. In doing so, it has set forth the standard that

this Circuit must apply.

## II.   This Court Has Faithfully Applied *Farmer's* Recklessness Standard for Decades

This Court historically has interpreted and applied *Farmer*'s deliberate

indifference standard faithfully, holding that to violate the Eighth Amendment, a

prison official must be aware of and disregard a serious risk to inmate health or

safety. This Court explored *Farmer*'s deliberate indifference standard early on in *Hardin v. Hayes*, which cited *Farmer* and explained that "[t]o prove deliberate indifference, [the plaintiff] needed to demonstrate that the relevant City personnel acted with subjective recklessness, i.e. that their conduct was very unreasonable in light of a known risk that delay in mental health treatment would cause [the plaintiff] mental anguish." 52 F.3d 934, 939 (11th Cir. 1995). This is the deliberate indifference inquiry to a tee, exactly as the Supreme Court articulated.

In the following years, this Court handed down numerous Eighth Amendment cases that identified *Farmer*'s subjective recklessness standard. *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1191 n.28 (11th Cir. 1994) ("The Court has adopted a subjective recklessness standard from criminal law so that a prison official is not deliberately indifferent unless the individual knows of and disregards an excessive risk to inmate health and safety") (internal citation and quotation marks omitted) (overruled on other grounds); *Haney v. City of Cumming*, 69 F.3d 1098, 1102 (11th Cir. 1995); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996); *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 (11th Cir. 1997) ("the case law had made it clear that an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate") (overruled on other grounds); *Steele v. Shah*, 87 F.3d 1266, 1269 (11th Cir. 1996), *as amended* (Sept.

6, 1996) (deliberate indifference is knowledge of a substantial risk and disregard of that risk); *Campbell v. Sikes*, 169 F.3d 1353, 1370 (11th Cir. 1999) (deliberate indifference requires a jury to inquire from direct or circumstantial evidence whether the defendant was aware of risk of harm and did nothing about it). There was, and is, no reason to depart from or elaborate on the mental state requirement expressed in this line of cases.

This Court has also rightly memorialized this standard in other places. For instance, the Eleventh Circuit's Pattern Jury Instruction on deliberate indifference also comports with *Farmer*'s definition. *See Eleventh Circuit Pattern Jury Instructions* 5.8 (2022). Pattern Jury Instruction 5.8 dictates that "to decide whether [defendant] was deliberately indifferent to [plaintiff]'s serious medical need, you may consider all the relevant circumstances," including the injury's seriousness, any delay in medical care, and the reasons for the delay. A jury in this Circuit currently is instructed properly on the mental state governing Eighth Amendment deliberate indifference claims, and this Court should not hold in this appeal that the requirement is any different.

## III. All Other Courts of Appeals Have Applied *Farmer*'s Recklessness Standard Uniformly

All other courts of appeals have hewn strictly to *Farmer*, applying its reckless mental state requirement without alteration. *See Leite v. Bergeron*, 911 F.3d 47, 52 (1st Cir. 2018); *Edwards v. Quiros*, 986 F.3d 187, 192 (2d Cir. 2021)

20

("Deliberate indifference…requires a showing that the prison official knew of, and disregarded, an excessive risk to inmate health or safety") (internal quotation omitted and alteration accepted); *Clark v. Coupe*, 55 F.4th 167, 179 (3d Cir. 2022); *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023); *Thompson v. Texas Dep't of Crim. Justice*, 67 F.4th 275, 281 (5th Cir. 2023) (recognizing the "required mental state" for deliberate indifference as "subjective recklessness") (quoting *Farmer*, 511 U.S. at 839); *Reedy v. West*, 988 F.3d 907, 914 (6th Cir. 2021) (deliberate indifference "entails 'more than mere negligence' and instead is akin to 'subjective recklessness as used in the criminal law'") (quoting *Farmer*, 511 U.S. at 835, 839-40); *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 752 (7th Cir. 2021); *Hodges v. Dep't of Corrs.*, 61 F.4th 588, 592 (8th Cir. 2023) ("[d]eliberate indifference under the Eighth Amendment is the equivalent of criminal recklessness"); *Hampton v. California*, 83 F.4th 754, 767 (9th Cir. 2023); *Paugh v. Uintah County*, 47 F.4th 1139, 1154 (10th Cir. 2022) (recognizing deliberate indifference as equivalent to recklessness in which "'a person disregards a risk of harm of which he is aware'") (quoting *Farmer*, 511 U.S. at 835); *Bernier v. Allen*, 38 F.4th 1145, 1151 (D.C. Cir. 2022). The uniformity of the other circuits' applications of *Farmer* underscores the standard's workability and widespread acceptance.

21

**IV.    Of the Four States of Mind Available in Constitutional Claims, the Supreme Court Says that Criminal Recklessness Governs Eighth Amendment Claims**

In identifying the state of mind required to establish deliberate indifference under the Eighth Amendment—in addition to applying the Supreme Court and circuit precedents just discussed—it is helpful to consider a few more basic principles. First, the Supreme Court has identified only four possible mental states that might apply to constitutional torts—purpose, knowledge, recklessness, and negligence—and the Supreme Court has decided on subjective recklessness for deliberate indifference claims. Second, there are no other existing mental state requirements, and so any other mental state requirement has no place in the analysis before this Court.

**A.    Only Four Mental States Govern All Constitutional Claims**

*Counterman v. Colorado* reiterated last Term that there are only four possible mental states that might give rise to liability in evaluating constitutional claims: purpose, knowledge, recklessness, and negligence. 600 U.S. 66, 78-79 & n.5 (2023). These four mental states are an enduring feature of criminal law, outlined in the Model Penal Code, § 2.02, and of civil tort law, outlined in the Restatement (Second) of Torts § 8A (1965).

The first two are subjective standards. "Purpose is the most culpable level in the standard mental state hierarchy, and the hardest to prove," the Court in

22

*Counterman* explained, and "[a] person acts purposely when he 'consciously desires' a result[.]" 600 U.S. at 79-80 (quoting *United States v. Bailey*, 444 U.S. 394, 404 (1980). Knowledge—the next level down, but so closely related to purpose that is it "not often distinguished"—requires the tortfeasor to be "aware that [a] result is practically certain to follow [from his conduct.]" *Id.* (quoting *Bailey*, 444 U.S. at 404). Tort law generally pairs purpose and knowledge together under the heading "intent," meaning that the actor has "in the mind a purpose (or desire) to bring about given consequences" or "in mind a belief (or knowledge) that given consequences are substantially certain to result from the act." *Prosser and Keaton on The Law of Torts* 34-35 (W. Page Keeton et al. eds., 5th ed. 1984). However framed, these mental states center on a desire to bring about particular consequences. Restatement (Second) of Torts § 8A.

In contrast, recklessness "involves insufficient concern with risk, rather than awareness of impending harm." *Counterman*, 600 U.S. at 79 (citing *Borden v. United States,* 141 S. Ct. 1817, 1823-1824 (2021) (plurality opinion)). Recklessness is a relatively new concept—it "was not a word in the common law's standard lexicon, nor an idea in its conceptual framework[.]" *Voisine v. United States*, 579 U.S. 686, 697 (2016). In the criminal context, recklessness is subjective. It means that the actor "'consciously disregard[s] a substantial [and unjustifiable] risk that the conduct will cause harm to another.'" *Counterman*, 600

U.S. at 79 (2023) (quoting *Voisine*, 579 U.S. at 691). However, in the civil context, recklessness is objective. There, a tortfeasor may be reckless not only when the tortfeasor knows of and disregards a substantial and unjustifiable risk, but also when the tortfeasor disregards an "obvious risk," *Prosser and Keeton on The Law of Torts*, *supra*, at 213; *see also* Restatement (Second) of Torts § 500 (1965) (liability attaches when the actor is aware of "facts which would lead a reasonable man to realize…that his conduct creates an unreasonable risk"). This distinction is discussed further in the following section.

Lastly, negligence is a purely objective standard. "A person acts negligently if he is not but should be aware of a substantial risk[.]" *Counterman*, 600 U.S. at 79 n.5. Liability is based not on what the actor thinks, but instead on what a reasonable person would think in the same circumstances. *Id.* In contrast to recklessness, which in the criminal context requires that the individual subjectively recognize a risk, negligence concerns an individual's failure to perceive a risk of harm. *Borden*, 141 S. Ct. at 1824.

Accordingly, the four mental states available for a constitutional claim are as follows:



There are no other existing mental state requirements that this Court could incorporate into a constitutional claim, including an Eighth Amendment claim.

### B. The Supreme Court Has Settled on Criminal Recklessness in This Context

As discussed, the Supreme Court has settled on criminal recklessness as the state of mind required to establish an Eighth Amendment deliberate indifference violation. *See supra* § I.A; *Farmer*, 511 U.S. at 836.

The Supreme Court expressly rejected the objective mental state requirements just discussed—negligence and objective recklessness—as not culpable enough to state an Eighth Amendment violation. *Estelle*, 429 U.S. at 106; *Farmer*, 511 U.S. at 836-37, 841 (holding that the objective version of recklessness is "not an appropriate test for determining the liability of prison officials under the Eighth Amendment").

Instead, the Court imposed "subjective recklessness as used in the criminal law," *id.* at 839-40. Criminal recklessness, with its emphasis on the prison official's subjective knowledge of risk, is "morally culpable conduct" because it

"involve[es] a 'deliberate decision to endanger another.'" *Id.* (quoting *Voisine*, 579 U.S. at 694); *see also* Scott Rauser, Comment, *Prisons are Dangerous Places: Criminal Recklessness as the Eighth Amendment Standard of Liability in* McGill v. Duckworth, U. MINN. L. REV. 165, 166 (1991) (explaining criminal recklessness as a "subjective 'actual knowledge' standard," compared to civil recklessness's "objective 'should have known' standard," grounded in tort law). Once this subjective mental state—knowledge of a risk—is established, prison officials must take reasonable steps to avoid the harm or else they are liable for deliberate indifference.

Finally, the Supreme Court has stressed repeatedly that it is not necessary to show that a prison official acted with intent, purpose, or knowledge to bring about a particular harm to a prisoner in order to establish an Eighth Amendment deliberate indifference violation. *Farmer*, 511 U.S. 836; *Wilson*, 501 U.S. at 305. Accordingly, the Supreme Court has eliminated all possible mental states that might apply in this context, except for subjective, criminal recklessness. This Court must apply that standard and no other.

## V. This Court's Recent Decisions Have Imposed the Wrong Mental State Requirement

This Court's more recent decisions have sometimes imposed incorrect mental state requirements in Eighth Amendment deliberate indifference cases. The Court has at times incorrectly viewed these cases through a negligence lens. In

addition, in some cases it has erroneously viewed the mental state dividing line for deliberate indifference claims as "gross negligence," requiring that standard to be exceeded before liability is imposed. Complicating matters further, efforts to describe "gross negligence" have created other problems, including the use of unrecognized and unhelpful phrases to describe the requisite mental state, and the imposition of impermissibly heightened mental state standards resembling an intent to cause harm. These cases depart from Supreme Court precedent, and the en banc Court should set them aside in favor of the subjective recklessness standard set out above.

## A.    This Court Should Not Use a Negligence Standard

This Court's introduction of a "negligence" framework into the analysis of whether a prison official has acted with the requisite mental state for deliberate indifference has caused confusion. The Supreme Court in *Farmer* articulated a two-factor mental state requirement in deliberate indifference cases—a prison official knew of a substantial risk of serious harm and disregarded it by failing to take reasonable measures to address it—and this Court correctly adopted it, *see supra* § II. Yet later, in *McElligott v. Foley*, this Court seized on the rule that "medical malpractice is not a constitutional violation" and added it as third element for deliberate indifference claims, thus forcing a consideration of negligence in every deliberate indifference case. 182 F.3d 1248, 1255 (11th Cir. 1999). "[U]nder

27

*Estelle* and *Farmer,*" the Court said, "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Id.* As this Court has since recognized, while this additional third element is not technically incorrect, it is redundant, given that any disregard of a *known* risk is necessarily more than negligent. *Smith v. Wood*, No. 20-12918, 2021 WL 4452526, at *3 (11th Cir. Sept. 29, 2021) ("Fortunately, we need not resolve the inconsistency in our case law (nor the fact that the third prong of our deliberate indifference test is somewhat redundant with the first).") (internal citation omitted). And given that the Supreme Court has clearly defined what the standard is (subjective recklessness), there is no need to define it by what it is not (negligence). This Court should not incorporate negligence into a mental state requirement that the Supreme Court has defined as subjective recklessness.

Indeed, this Circuit stands alone in appending negligence as an additional element into *Farmer*'s test for deliberate indifference. *See, e.g.*, *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) ("[i]n the Ninth Circuit, the test for deliberate indifference consists of two parts"); *cf. Pinkston v. Kuiper*, 67 F.4th 237, 241 (5th Cir. 2023) (breaking the deliberate indifference showing into three parts: "the defendant (1) was aware of facts from which the inference could be drawn that substantial risk of serious harm exists; (2) subjectively drew the inference…; and

(3) disregarded the risk.") (internal quotation marks and citation omitted). While every federal circuit has recognized that deliberate indifference is more than mere negligence, no other court has added this gloss as a standalone element. *See supra* § III.

By contrast, in holding that the mental state requirement for deliberate indifference includes an analysis of whether the conduct in question was "more than grossly negligent," this Court has departed from Supreme Court precedent and has split from all of the other courts of appeals. This Court should rejoin its sister circuits. *See Corporación AIC, SA v. Hidroeléctrica Santa Rita S.A.*, 66 F.4th 876, 889 (11th Cir. 2023) (en banc) (overruling two prior cases that "directly conflicted with the decisions of our sister circuits"); *Dukes v. Deaton*, 852 F.3d 1035, 1043 (11th Cir. 2017) (noting that other circuits' decisions supported the Court's conclusion in finding an officer's conduct unconstitutional). Given that every other circuit has faithfully implemented *Farmer*'s recklessness standard, this Court should not adopt an outlier position.

### B.    This Court Should Not Use a Gross Negligence Standard

Nor should this Court use a "gross negligence" standard in any circumstance. Starting in *Miller v. King*, this Court sometimes has said that "[n]egligence or even gross negligence does not satisfy [the deliberate indifference] standard." 384 F.3d 1248, 1261 (11th Cir. 2004), *vacated on other*

*grounds by Miller v. King*, 449 F.3d 1149 (11th Cir. 2006). In *Bozeman v. Orum*, the Court adopted *Miller*'s use of the "gross negligence" standard, and combining it with *McElligott*'s view that there are three components of the deliberate indifference test, held that "[t]o satisfy the subjective element of deliberate indifference to [an inmate's] serious medical need, Plaintiff must prove three things: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." 422 F.3d 1265, 1272 (11th Cir. 2005) (the bracketed "gross" is an alteration from the original, replacing the word "mere" from earlier cases). The use of "gross negligence" is improper. It introduces unnecessary confusion, relies upon a dubious legal construct, and has been rejected by the Supreme Court.

The Supreme Court and courts of appeals have long criticized the concept of "gross negligence," observing that "there is no intelligible distinction between ordinary and gross negligence." *Milwaukee & St. P.R. Co. v. Arms*, 91 U.S. 489, 494 (1875). As the Seventh Circuit observed in *Archie v. City of Racine*:

> Gross negligence blends into negligence; there is an indistinct and unusually invisible line between benefits exceeding the cost of precautions (negligence) and benefits substantially exceeding the costs (gross negligence). The malleable quality of these terms has produced scoffing among many, who see gross negligence as simply negligence "with the addition of a vituperative epithet." *Wilson v. Brett,* [1843] 11 M. & W. 113, 116, 152 Eng.Rep. 737 (Rolfe, B.). See also Prosser & Keeton, Torts § 34.

30

847 F.2d 1211, 1219 (7th Cir. 1988); *see also id.* at 1225-26 (Posner, J., concurring) ("The line between ordinary and gross negligence is too fine to constitute a satisfactory demarcation between federal and state jurisdiction; the distinction has largely been discarded in tort law, as unworkable."). "A line that cannot be policed is not a line worth drawing in constitutional law." *Archie*, 847 F.2d at 1219.

Moreover, the term "gross negligence" has no settled meaning, further undermining its utility to courts and juries. Courts across the country disagree about the meaning of the phrase. *See* Olga Voinarevich, *An Overview of the Grossly Inconsistent Definitions of "Gross Negligence" in American Jurisprudence*, 48 J. MARSHALL L. REV. 471, 481 (2015). As Prosser and Keeton explain, "gross negligence" has been "condemned by most writers, and . . . rejected at common law by most courts, as a distinction 'vague and impracticable in [its] nature, so unfounded in principle,' that it adds only difficulty and confusion to the already nebulous and uncertain standards which must be given to the jury." *Prosser and Keeton on The Law of Torts*, *supra*, at 210.

Finally, even if the concept of "gross negligence" retained legal vitality, the Supreme Court has left no room for it in Eighth Amendment cases. Reflecting the authorities above, the Supreme Court in *Farmer* explained that "gross negligence" is a "nebulous" term, "in practice typically meaning little different from

recklessness as generally understood in the civil law," and then ruled that criminal recklessness should be the concept that guides the analysis of liability for Eighth Amendment deliberate indifference. 511 U.S. at 836 n.4, 839-40.

### C.    Other Heightened Mental State Requirements Should Not Be Used

Complicating matters further, in recent years this Court has explained the "gross negligence" standard using progressively more extreme language, suggesting that a heightened mental state resembling intent to bring about harm may be necessary to prove an Eighth Amendment deliberate indifference claim. This creep toward a heightened mental state requirement exceeding criminal recklessness should be stopped.

Take *Goodman v. Kimbrough*, for instance, a run of the mill Eighth Amendment case in which this Court cites the "more than gross negligence" standard and further elaborates: "the deliberate indifference standard—and the subjective awareness required by it—is *far more onerous* than normal tort-based standards of conduct sounding in negligence." 718 F.3d 1325, 1332 (11th Cir. 2013) (emphasis added). This "far more onerous" language is inaccurate. Recklessness is not far more onerous than negligence; it is simply the next most culpable step up the mental-state scale, requiring only disregard of a subjectively known risk. *See supra* § III.A.

*Hoffer v. Secretary Florida Department of Corrections* picked up the "far more onerous" language from *Goodman* and reverted back to pre-*Estelle* language to add that prison officials must commit conduct that "shock[s] the conscience" or is "intolerable to fundamental fairness." 973 F.3d 1263, 1271-72 (11th Cir. 2020).[8] In *Thomas v. Bradshaw*, this Court upped the ante once again, defining an Eighth Amendment violation as "grossly incompetent" medical care. 2022 WL 333244, at *4 (11th Cir. Feb. 4. 2022). Finally, the panel opinion in this case imparted an "egregiousness" standard. *See* Op. at 24.

Each of these mental state requirements—conscience shocking, gross negligence, far more onerous than negligence, intolerable to fundamental fairness, grossly incompetent—have no place in Eighth Amendment jurisprudence. Each of them is vague and unhelpful to a court or jury. And all of them conflict with and do not add anything to the criminal recklessness standard set out in *Farmer*. As the Supreme Court held in *Farmer*, a purpose to inflict harm or knowledge that particular harm is certain to occur is not required for an Eighth Amendment deliberate indifference violation. 511 U.S. at 837.

---

[8] This language appeared in this Circuit before *Farmer, see Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991), and finds its origins in a Third Circuit case called *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970), which was issued before *Estelle*. Those cases imposed mental state requirements higher than *Farmer* now establishes.

**D.      The Original Understanding of the Eighth Amendment Does Not Require Intentional Conduct**

Finally, it is worth noting that a concurring opinion in this case argued that the original understanding of the Eighth Amendment might require proof of intent to bring about the harm caused before imposing liability for an Eighth Amendment violation. Op. at 30-38. (Newsom, J., concurring). This is a mistaken view of the original understanding of the Eighth Amendment. Properly understood, the original understanding of the Eighth Amendment does not require a prison official to act with intent before liability can be imposed for an Eighth Amendment violation. Instead, according to the correct original understanding, the Eighth Amendment is violated whenever prison officials permit conditions that significantly enhance the risk of severe harm in violation of long-held standards.

The Eighth Amendment prohibits inflicting "cruel and unusual punishments" on those convicted of crimes. U.S. CONST. AMEND. VIII. A minority of Supreme Court Justices have advanced the view in separate opinions that the Cruel and Unusual Punishments Clause outlaws only those situations where a prison official—intentionally, purposely, or knowingly—brings about a harm that is cruel. *Baze v. Rees*, 553 U.S. 35, 96 (2008) (Thomas, J., concurring in the judgment) (arguing that the Eighth Amendment originally prohibited punishments that were "purposely designed to inflict pain and suffering"); *Glossip v. Gross*, 576

34

U.S. 863, 899-900 (2015) (Thomas, J., concurring) (same). But that reading is not well grounded in the Eighth Amendment's history.

As Professor John Stinneford has explained, the linguistic and historical evidence from the time that the Eighth Amendment was adopted demonstrates that the correct original understanding is that the Cruel and Unusual Punishments Clause prohibits all punishments whose effects are cruel, regardless of the prison official's state of mind. "[T]he word 'cruel' in the Cruel and Unusual Punishments Clause originally referred to the effect of the punishment, not the intent underlying it." John F. Stinneford, *The Original Meaning of "Cruel,"* 105 GEO. L.J. 441, 493 (2017).

Prison officials have a deeply rooted common law duty to provide adequate medical care to prisoners. *Id.* at 456-457; *see also Estelle*, 429 U.S. at 103-04. "If officials create or permit conditions that significantly enhance the risk of severe harm, as compared to longstanding prior practice, the resulting punishment may appropriately be called cruel and unusual." Stinneford, *supra*, at 502. *See also Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003) ("We will no more tolerate prison officials' deliberate indifference to the chronic pain of an inmate than we would a sentence that required the inmate to submit to such pain."). The government must intend to punish the prisoner—a requirement easily satisfied in a case like this merely by the fact that a sentence of imprisonment has been imposed

35

following the criminal conviction—but to violate the original understanding of the Eighth Amendment the prison official need not intend to harm the prisoner by withdrawing medical care. *Id.* at 485, 502. Instead, if the prison official allows a situation in which the long-standing duty to provide adequate medical care is not met and the risk of harm is significantly enhanced, the Eighth Amendment is violated, as an original matter. *Id.*

There is no historical evidence that an intent to cause harm was ever part of the constitutional calculus, and there is strong evidence that the punisher's state of mind did not matter at all. Stinneford, *supra*, at 464. The Eighth Amendment's original understanding therefore sets out an objective standard—the clause "originally prohibited punishments that are unduly harsh in light of longstanding prior practice." *Id.* at 493. Applying the correct original understanding, the Eighth Amendment prohibits a harm to a prisoner that is objectively cruel, without any requirement that the prisoner official subjectively intended to inflict that cruel punishment.

In sum, reading the Eighth Amendment to require prison officials to act with intent to cause harm is inconsistent with the original understanding of the Cruel and Unusual Punishments Clause. As originally understood, there is strong evidence that the Eighth Amendment may not require anything more than negligence on the part of a prison official. As a result, this Court should view the

36

recklessness standard dictated by *Farmer* as *a ceiling* on the mental state required to establish an Eighth Amendment violation, and it should reject any argument that the Eighth Amendment requires the higher culpability mental states of intent, purpose, or knowledge.

## VI.    Construing the Record in the Plaintiff's Favor, Defendants Acted with Deliberate Indifference

Applying the correct mental state requirement to this case and construing the summary judgment record in the light most favorable to Mr. Henegar, Defendants acted with deliberate indifference in failing to take reasonable steps to address his serious medical need. A reasonable jury could conclude that each of the Defendants (1) knew that Mr. Henegar faced a substantial risk of serious harm because he was not receiving his seizure medication; and (2) disregarded that risk by failing to take reasonable steps to secure that medication for him, which was in stock in the prison in considerable supply. The panel agreed, at least with respect to Nurse Defendants Lee and Harrell: It acknowledged that a jury could conclude that these Defendants were aware that Mr. Henegar faced a risk of serious harm and disregarded it. Op. at 21, 23.[9]

---

[9] Defendants agree that Mr. Henegar suffered from an objectively serious health condition, and at least three of the Defendant-Appellees agree that he faced a serious risk of harm without his seizure medication. Here there is a dispute about Stroh, since he says that it would be safe for an epileptic person to go without medication "from time to time," and that five days without medication would be too long. Doc. 147-15, PP. 164-66. At a minimum, there is a dispute of fact about

### A.    A Jury Could Find That Custody Defendants Stroh and Keith Knew of and Disregarded the Substantial Risk of Serious Harm to Mr. Henegar

At summary judgment the parties agreed that the only question as to Defendants Stroh and Keith is whether they disregarded—*e.g.*, failed to take reasonable steps—to address the known risk Mr. Henegar faced without his medication. A jury could find that they did. In response to Mr. Henegar's missing medication, Stroh and Keith noted an unidentifiable marking and, later, question marks in his record at pill call. By Mr. Henegar's fourth day without medication, Stroh and Keith knew that jotting question marks in Mr. Henegar's medication record was not solving the problem, yet rather than make a simple phone call to the nurse as they had been trained to do, they disregarded the risk to Mr. Henegar's health and simply jotted down another question mark. This was the equivalent of "basically doing nothing," which this Court has found to be deliberately indifferent. *McElligott*, 182 F.3d at 1257.

This Court's precedents make clear that, having been made aware that Mr. Henegar's Dilantin was missing, Stroh and Keith were at a minimum required to ensure that the medical staff was informed of this emergency. *Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990) ("When prison guards ignore without

---

what Stroh knew and a jury could reasonably conclude that he was aware that four days was too many.

explanation a prisoner's serious medical condition that is known or obvious to them, the trier of fact may infer deliberate indifference") (internal citation and quotation marks omitted); *Waldrop v. Evans*, 871 F.2d 1030, 1036 (11th Cir. 1989) (prison official who "took no action" and failed to "inform competent authorities…of a prisoner's need for… care" was deliberately indifferent); *Sparks v. Ingle*, 724 F. App'x 692, 694 (11th Cir. 2018) (affirming denial of summary judgment for jail official who failed to administer plaintiff's seizure medication).

Instead Stroh and Keith turned a blind eye to Mr. Henegar's emergent medical need and responded in an ineffective, negligible manner that was far from reasonable. As this Court explained in *Carswell v. Bay County*, a jail administrator who "simply yelled into a crowded room: 'Get this man to see the Doctor'" was deliberately indifferent because he did "nothing significant to ensure that [plaintiff] received medical attention." 854 F.2d 454, 455, 457 (11th Cir. 1988). Defendants Stroh and Keith did even less than yell into a crowded room. By making a meaningless notation in a medication record, which they knew accomplished nothing, they essentially whispered into an empty room. Doc. 147-5, P. 135; Doc. 147-15, PP. 15, 150; Doc. 148-4, PP. 62, 120, 221-23. This is the exact kind of unreasonable response that this Court has found to be deliberately indifferent. *Id.*; *see also Benson v. Gordon County, Ga.*, 479 F. App'x 315, 318 (11th Cir.

2012) (leaving medication at plaintiff's cell door when he could not get out of bed to retrieve it is deliberate indifference).

**B.     A Jury Could Find That Nurse Defendants Lee and Harrell Were Aware Mr. Henegar Faced a Substantial Risk of Serious Harm but Did Nothing**

The parties agree that the only question as to Lee and Harrell involves the subjective part of the deliberate indifference test: whether they were aware that Mr. Henegar was not receiving his medication.[10] A jury could find that they were, and in that case the jury would find them to be deliberately indifferent. Such a conclusion aligns with past decisions of this Court. *Carswell*, 854 F.2d at 457 (affirming denial of summary judgment where jail physician's assistant was found deliberately indifferent for ignoring jail officers' warnings of plaintiff's serious medical need); *Duncan v. Corr. Med. Servs.*, 451 F. App'x 901, 905 (11th Cir. 2012) (summary judgment not appropriate for prison officials who "wholly ignore an inmate's prescription needs"); *Benson*, 479 F. App'x at 318 (jail nurse was deliberately indifferent when she failed to provide medication to prisoner); *Sparks*, 724 F. App'x at 694 (affirming denial of summary judgment for jail official who failed to administer plaintiff's seizure medication); *see also Qamar v. C.I.A.*, 489

---

[10] If Defendants Lee and Harrell were aware of the risk to Mr. Henegar, then it is agreed that they disregarded it by failing to take reasonable steps to abate it. Indeed, they failed to take the available and simple step of procuring Mr. Henegar a dose of Dilantin from the prison's medicine cabinet.

F. App'x 393, 396 (11th Cir. 2012) (plaintiff's allegations that he was denied access to Dilantin stated claim for deliberate indifference).

This record provides ample evidence from which a jury could conclude that Lee and Harrell were aware of the missing medications, as the panel acknowledged. Op. at 23. Lee was personally informed that Mr. Henegar was out of Dilantin. Doc. 147-4, P. 36; Doc. 147-5, P. 141, 144; Doc. 147-6, P. 293; Doc. 147-10; Doc. 148-5, P. 73. On top of that, her duties required her to check the medication records multiple times per day, including every morning to ensure there were no problems with nighttime pill call. Doc. 147-4, PP. 208-09; Doc. 147-5, PP. 11, 148; Doc. 147-12, P. 157-58; Doc. 147-15, P. 143 Doc. 155-10, P. 2. In doing so, Lee would not only have seen the question marks in Mr. Henegar's chart, but also would have seen a post-it note sticking out of the medication binder like a warning flag, alerting her of the problem with Henegar's medication. Doc. 147-8, P. 65; Doc. 147-12, PP. 157, 161-62; Doc. 147-5, P. 132.

For her part, Harrell's job was to keep track of medication supplies, including checking the medication orders and inventorying the pill cart. Doc. 147-4, PP. 88-89, 125, 157, 269; Doc. 147-8, PP. 58, 178; Doc. 147-12, PP. 108, 132; Doc. 148-3, P. 5; Doc. 148-5, PP. 165, 167-68, 255-56, 267, 280; Doc. 155-9, P. 9. Performing these duties, she would have seen that Henegar's medication was missing. She also conducted pill call and saw the post-it alerting about a problem.

Doc. 147-4, P. 47; Doc. 147-5, P. 132; Doc. 147-12, P. 161-62. Based on this evidence the "subjective prong's first subpart is pretty easily satisfied." Op. at 22.

In sum, the record construed in Mr. Henegar's favor allows for the conclusion that each of the Defendants was subjectively aware of Mr. Henegar's lack of medication and the serious risk to Mr. Henegar that it posed, and that each of the Defendants disregarded it by failing to take reasonable steps to abate it. As a result, a jury must consider Mr. Henegar's claims and the Defendants are not entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, this Court should apply the mental state requirement for Eighth Amendment deliberate indifference claims dictated by the Supreme Court in *Farmer*: A prison official is liable when she or he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Applying that correct standard in this case, the Defendants-Appellees are not entitled to summary judgment. Plaintiff respectfully requests that this Court reverse and remand for further proceedings.

Date: November 29, 2023

Respectfully submitted,

/s/ Rachel Brady
*Attorney for Betty Wade,*
*as Personal Representative*
*Estate of David Henegar*

42

Mike Kanovitz
Steve Art
Rachel Brady
Annie Prossnitz
LOEVY + LOEVY
311 N. Aberdeen Street, Third Floor
Chicago, IL 60607
312-243-5900
brady@loevy.com

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

I, Rachel Brady, an attorney, hereby certify that this brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7) because it contains 10,256 words, excluding those parts excluded by FED. R. APP. P. 32(f). This motion complies with the typeface requirements of FED. R. APP. P.32(a)(5) and FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14-point.

/s/ Rachel Brady
Illinois Bar No. 6312402
*Attorney for Betty Wade, as Personal Representative of the Estate of David Henegar*

## CERTIFICATE OF SERVICE

I, Rachel Brady, an attorney, certify that on November 29, 2023, I served a copy of this document on all counsel of record by filing it using the Court's CM/ECF filing system.

/s/ Rachel Brady
Illinois Bar No. 6312402
*Attorney for Betty Wade, as Personal Representative of the Estate of David Henegar*