No. 21-14275

_____

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

_____

BETTY WADE,

*Plaintiff-Appellant*,

*v.*

GEORGIA CORRECTIONAL HEALTH, LLC, *et al.*,

*Defendants-Appellees*.

_____

Appeal from the United States District Court
for the Northern District of Georgia
No. 4:18-cv-192-AT — Amy Totenberg, *Judge*.

_____

**EN BANC BRIEF OF FORMER CORRECTIONAL
ADMINISTRATORS AS *AMICI CURIAE*
IN SUPPORT OF NEITHER PARTY**

_____

Sarah Grady*
Jed W. Glickstein
Kaplan & Grady LLC
2071 N. Southport Ave.
Suite 205
Chicago, Illinois 60614
(312) 852-2184
sarah@kaplangrady.com
jglickstein@kaplangrady.com

*Counsel of Record*

*Wade v. Georgia Correctional Health, LLC*, No. 21-14275

## **CERTIFICATE OF INTERESTED PERSONS**

Pursuant to 11th Circuit Rule 26.1-1 through 26.1-3 and 11th Circuit Rule 29-1, *amici* provide this Certificate of Interested Persons and Corporate Disclosure Statement.

To the best of *amici*'s knowledge, the following persons and entities may have an interest in the outcome of this case:

- Appelbaum, Eve (party counsel)

- Art, Steven (party counsel)

- Arthur, Megan (defendant)

- Augusta University Health (defendant)

- Augusta University Medical Center, Inc. (defendant)

- Brady, Rachel (party counsel)

- Burke, Charles (defendant)

- Chalmers, Roger A. (party counsel)

- CHI Memorial (defendant)

- Clark, John (*amicus curiae*)

- Coles Barton, LLP (party counsel)

- Cornerstone Medical Center (defendant)

- Georgia Correctional Health, LLC (defendant)

*Wade v. Georgia Correctional Health, LLC*, No. 21-14275

## CERTIFICATE OF INTERESTED PERSONS (cont.)

- Glickstein, Jed W. (counsel for *amicus curiae)*

- Grady, Sarah (counsel for *amicus curiae*)

- Hamilton, Samantha C. (party counsel)

- Harrell, Julie (defendant)

- Jones, Justin (*amicus curiae*)

- Kanovitz, Michael (party counsel)

- Kaplan & Grady LLC (counsel for *amicus curiae*)

- Lee, Sherie L. (defendant)

- Lewis, Sharon (defendant)

- Lindsay, Cameron (*amicus curiae*)

- Loevy & Loevy (party counsel)

- Lones, Laura L. (party counsel)

- Martin, Steve (*amicus curiae*)

- McAndrew, Ronald (*amicus curiae*)

- McDade, Cindy (defendant)

- Morgan, Tracy Marie (party counsel)

- Nichols, Bill (defendant)

- Owensby, John (defendant)

*Wade v. Georgia Correctional Health, LLC*, No. 21-14275

## CERTIFICATE OF INTERESTED PERSONS (cont.)

- Petrany, Stephen J. (party counsel)

- Pritchett, Carrie (defendant)

- Prossnitz, Anne (party counsel)

- Sparkman, Emmitt (*amicus curiae*)

- Spears Moore Rebman & Williams (party counsel)

- State of Georgia (defendant)

- Stroh, Keith (defendant)

- Tady, Aaron P.M. (party counsel)

- Teaster, Susan E. (party counsel)

- Totenberg, Hon. Amy (district judge)

- Wade, Betty (plaintiff)

- Weiner, Cara (party counsel)

- Vail, Eldon (*amicus curiae*)

To the best of *amici*'s knowledge, no other persons, associations of persons, firms, partnerships, or corporations have an interest in the outcome of this case or appeal.

# TABLE OF CONTENTS

INTERESTS OF *AMICI CURIAE* ............................................................1

STATEMENT OF THE ISSUE .................................................................4

SUMMARY OF ARGUMENT ..................................................................4

ARGUMENT ........................................................................................6

I.   Deliberate indifference consists of knowing and unreasonable disregard of a substantial risk. .......................................................6

II.   The Court should abrogate its existing three-part test................10

    A.   The existing test is redundant at best.................................12

    B.   The existing test is in tension with *Farmer*. .......................14

    C.   The existing test is unnecessarily confusing.......................18

III.   Abrogating the existing test is consistent with real-world prison practices and would not implicate reliance interests....................20

IV.   The Court should re-evaluate summary judgment in this case using the appropriate legal framework. .......................................25

CONCLUSION ...................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Poag,*
  61 F.3d 1537 (11th Cir. 1995) ............................................................. 10

*Adickes v. S. H. Kress & Co.,*
  398 U.S. 144 (1970) ............................................................................ 26

*Borden v. United States,*
  141 S. Ct. 1817 (2021) ........................................................................ 16

*Corporación AIC, SA v. Hidroeléctrica Santa Rita S.A.,*
  66 F.4th 876 (11th Cir. 2023) ............................................................. 24

*Cottrell v. Caldwell,*
  85 F.3d 1480 (11th Cir. 1996) ............................................................. 10

*Counterman v. Colorado,*
  600 U.S. 66 (2023) .............................................................................. 15

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,*
  489 U.S. 189 (1989) .......................................................................... 6, 7

*Doe v. Welborn,*
  110 F.3d 520 (7th Cir. 1997) ............................................................... 25

*Estelle v. Gamble,*
  429 U.S. 97 (1976) ......................................................................... 6, 7, 8

*Farmer v. Brennan,*
  511 U.S. 825 (1994) .................................................................... *passim*

*Global-Tech Appliances, Inc. v. SEB S.A.,*
  563 U.S. 754 (2011) ............................................................................ 17

*Helling v. McKinney*,
   509 U.S. 25 (1993)..............................................................6, 7

*Hope v. Pelzer*,
   536 U.S. 730 (2002)..............................................................6

*Keohane v. Florida Dep't of Corr. Sec'y,*
   952 F.3d 1257 (11th Cir. 2020)............................................6

*McElligott v. Foley*,
   182 F.3d 1248 (11th Cir. 1999)..........................................10

*Petties v. Carter*,
   836 F.3d 722 (7th Cir. 2016)..............................................27

*Smith v. Wood*,
   No. 20-12918, 2021 WL 4452526 (11th Cir. Sept. 29, 2021).............12

*United States v. Alvarez*,
   809 F. App'x 562 (11th Cir. 2020)......................................18

*Voisine v. United States*,
   579 U.S. 686 (2016)............................................................17

*Wade v. McDade*,
   67 F.4th 1363 (11th Cir. 2023) .................................. *passim*

*Whitley v. Albers*,
   475 U.S. 312 (1986)..............................................................7

*Wilson v. Seiter*,
   501 U.S. 294 (1991)........................................................14, 15

**Other Authorities**

B. Jaye Anno, *Correctional Health Care: Guidelines for the Management
   of an Adequate Delivery System*, U.S. DEP'T OF JUSTICE, NAT'L INST.
   OF CORR. 49 (2001 ed.) ....................................................21

*Eleventh Circuit Pattern Jury Instrs., Civil Cases* (Mar. 2022 rev.)......20

Model Penal Code § 2.02 .......................................................... 16

Wayne R. LaFave, 1 *Substantive Criminal Law* (3d ed. 2023) .............. 18

**Regulations**

Colo. Dep't of Corr., Admin. Reg. No. 650-02, *Protective Custody*
(Nov. 15, 2023) ....................................................... 22

Ind. Dep't of Corr., Pol'y No. 02-01-107, *The Use and Operation of*
*Protective Custody* (Aug. 1, 2018) ....................................... 22

Okla. Dep't of Corr., OP-060106, *Non-Associations and Protective*
*Measures* (Mar. 30, 2022) ................................................ 22

28 C.F.R. § 115.22 .................................................... 23

28 C.F.R. § 115.31 .................................................... 23

## INTERESTS OF *AMICI CURIAE*

*Amici curiae* are former correctional administrators with more than 275 collective years of experience in the field of corrections, including supervising and training personnel in federal and state prisons throughout the country.[1]

**John Clark** was the Assistant Director of the Federal Bureau of Prisons between 1991 and 1997. From 1989 to 1991, Mr. Clark was the Warden of the U.S. Penitentiary Marion, then the highest security correctional facility in the United States. He has more than 45 years of experience working in the field of corrections. Mr. Clark now serves as a correctional consultant to private parties and governmental agencies nationwide.

**Justin Jones** was the Director of the Oklahoma Department of Corrections from 2005 to 2013. Mr. Jones has worked in the field of corrections for more than 45 years, including most recently as Director of

---

[1] Pursuant to Fed. R. App. P. 29(a)(4)(E), the undersigned states that (i) no counsel for a party authored this brief in whole or in part, (ii) no party's counsel made a monetary contribution intended to fund the preparation or submission of this brief, and (iii) no person other than *amici curiae* or their counsel made a monetary contribution intended to fund the preparation or submission of this brief. The parties have consented to the filing of this brief.

the Tulsa County Juvenile Bureau from 2015 to 2021. For the past decade, Mr. Jones has served as an expert and consultant in the field of corrections.

**Cameron Lindsay** has more than 34 years of experience working in the field of corrections. From 1989 to 2009, Mr. Lindsay worked for the Federal Bureau of Prisons, serving in positions ranging from safety specialist to deputy regional director. From 2002 to 2014, Mr. Lindsay served as Warden for five correctional institutions, including three prisons. Mr. Lindsay currently serves as a consultant and expert witness for individuals and agencies nationwide.

**Steve J. Martin** has worked as a correctional officer, probation and parole officer, and prosecutor during his more than 50 years in the criminal justice field. He is the former General Counsel/Chief of Staff of the Texas prison system. Mr. Martin has served as a federal monitor in numerous cases involving correctional administration throughout the country and, for 20 years, he served as an expert in the civil rights sections of both the U.S. Department of Justice and the U.S. Department of Homeland Security. He has coauthored a book on Texas prisons, *Texas Prisons: The Walls Came Tumbling Down* (1987), and written extensively

on criminal justice issues. He has also served as a member of the faculty or visiting scholar at six different universities, including the University of Texas School of Law and Queens University, Belfast.

**Ron McAndrew** worked for the Florida Department of Corrections for 22 years, including serving as Warden of three separate prisons within the Department for approximately a decade. Upon retirement from the Florida Department of Corrections, Mr. McAndrew served as Interim Director of Corrections for Orange County. Mr. McAndrew currently consults with attorneys, law schools, and private and state agencies in the field of corrections throughout the country.

**Emmitt Sparkman** is the former Deputy Commissioner of Institutions for the Mississippi Department of Corrections. His corrections career spans over 48 years, during which he has held line and management positions in the states of Texas, Kentucky, and Mississippi. Mr. Sparkman is currently a consultant for jail and prison operations.

**Eldon Vail** is a long-serving corrections official for the Washington State Department of Corrections. He was Secretary of the Department (2007-2011), Deputy Secretary (1999-2006), and Superintendent (1987 and 1989-1994) of three institutions. He has 35 years of experience as a

correctional practitioner. Since his retirement from state service, Mr. Vail has served as an expert witness and correctional consultant for more than 10 years. He has been retained more than 60 times in more than 20 different states.

## STATEMENT OF THE ISSUE

What is the standard for establishing liability on an Eighth Amendment deliberate indifference claim?

## SUMMARY OF ARGUMENT

For decades, this Court has struggled to articulate whether deliberate indifference consists of conduct that is more than merely negligent or conduct that is more than grossly negligent. Applying the prior-panel-precedent rule, the panel here chose the latter. *See Wade v. McDade*, 67 F.4th 1363 (11th Cir. 2023).

In *amici*'s view, the premise of this debate is flawed. The deliberate indifference standard should not contain a "more than negligent" element in the first place. Such a formulation is redundant at best, and confusing in practice, because the first two steps of the deliberate indifference test are already premised on the assumption that negligent conduct does not violate the Eighth Amendment. Moreover, courts and juries will

inevitably find it difficult to apply inherently nebulous concepts like gross negligence consistently. *Amici* urge this Court to abrogate its legal test for deliberate indifference and return to the standard articulated in *Farmer v. Brennan*, 511 U.S. 825 (1994).

This position is bolstered by *amici*'s real-world experience with prison operations. *Amici* were personally responsible for overseeing prison officials and prison procedures, including training officials on how to conduct themselves in compliance with constitutional obligations. In *amici*'s experience, prison staff are simply not trained on fine-grained legal distinctions like simple or gross negligence, civil or criminal recklessness, and so on. Based on this experience, *amici* believe that jettisoning this Court's freestanding "more than negligent" test for deliberate indifference would have no effect on prison practice. If, on the other hand, this Court embraces a test that includes an additional requirement to compare a prison official's conduct to varying degrees of negligent conduct, it may inject confusion into how prison staff are trained or instructed on their obligations under the Constitution.

## ARGUMENT

## I. Deliberate indifference consists of knowing and unreasonable disregard of a substantial risk.

For nearly fifty years, it has been black-letter law that failure to attend to a prisoner's medical or other needs can violate the Eighth Amendment. *See Hope v. Pelzer*, 536 U.S. 730, 737-38 (2002); *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 198 n.5 (1989); *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). A plaintiff must make both an objective showing and a subjective showing under these precedents. First, the plaintiff must identify an objectively serious risk of harm—say, a disease requiring urgent treatment. *Keohane v. Florida Dep't of Corr. Sec'y,* 952 F.3d 1257, 1266 (11th Cir. 2020). Second, and more important for present purposes, the plaintiff must show that a state official has acted with "deliberate indifference" to that risk. *Id*.[2]

The deliberate indifference standard reflects a compromise between two competing interests. On the one hand, "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do

---

[2] Only the subjective deliberate indifference prong is at issue in this appeal. The objective prong is "undisputed." *Wade*, 67 F.4th at 1370.

so, those needs will not be met." *Estelle*, 429 U.S. at 103. Authorities' breach of this duty may lead to "pain and suffering"—and even "torture or a lingering death"—which "no one suggests would serve any penological purpose." *Id*. Accordingly, when the State "takes a person into its custody and holds him there against his will," the Constitution imposes "a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 199-200.

On the other hand, the Eighth Amendment is not a general font of tort law, and so legally and practically, every mishap in prison does not rise to a constitutional level. To be actionable under the Constitution, conduct "must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). In particular, the "accidental or inadvertent failure to provide adequate medical care to a prisoner" is not enough. *Helling*, 509 U.S. at 32.

In *Estelle*, the Supreme Court held that the "something more" required for constitutional liability is deliberate indifference. An accident, the Court stated, "is not on that basis alone to be characterized as wanton infliction of unnecessary pain." *Estelle*, 429 U.S. at 105. By

contrast, "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.*

In the years following *Estelle*, courts divided over the deliberate indifference standard, with some adopting a pure subjective knowledge test and others adopting a partially objective test (*i.e.*, one that considered what a prison official knew or should have known). In *Farmer*, the Court resolved the confusion. The Court first analogized the pure knowledge standard to criminal recklessness and the "knew or should have known" standard to civil recklessness. *Farmer*, 511 U.S. at 836-37. After canvassing relevant authorities and the constitutional underpinnings of the doctrine, the Court then held that "subjective recklessness as used in the criminal law"—*i.e.*, the purely subjective standard—is "the test for 'deliberate indifference' under the Eighth Amendment." *Id.* at 839-40.

*Farmer*'s subjective standard means that a plaintiff cannot recover under the Eighth Amendment for the failure "to alleviate a significant risk" that an official "should have perceived" but did not. 511 U.S. at 838. Instead, as with the criminal recklessness standard, the Eighth Amendment is violated only where an official is "aware of facts from

which the inference could be drawn that a substantial risk of serious harm exists" *and* "also draw[s] the inference." *Id*. at 837.

The Supreme Court has recognized, however, that direct evidence of a defendant's knowledge is rarely available, so subjective awareness can be inferred from circumstantial evidence like the obviousness of the risk or from evidence of willful blindness. 511 U.S. at 842-43. And the Supreme Court has further held that deliberate indifference requires a showing of *unreasonable* disregard of that risk. A prison official that responds reasonably to a known risk does not run afoul of the Eighth Amendment "even if the harm ultimately was not averted." *Id*. at 844.

In sum, the substantive standard under *Farmer* is clear: a prison official may be held liable for deliberate indifference "only if he [1] *knows* that inmates face a substantial risk of serious harm and [2] *disregards* that risk by failing to take reasonable measures to abate it." *Id*. at 847 (emphasis added). In articulating this test, and particularly by including a heightened subjective knowledge component, the Supreme Court ensured that the standard for deliberate indifference could not be met by showing merely negligent conduct. *Id*. at 835-36.

-9-

## II.    The Court should abrogate its existing three-part test.

Courts of appeals regularly apply *Farmer*'s two-part deliberate indifference test (knowledge of the risk and unreasonable disregard thereof) to claims like those in this case. But this Court—we believe uniquely among the circuits—has changed the *Farmer* test to include an additional element that is either redundant or that appears to impose a heightened objective component as well. Specifically, as the panel in this case held, in addition to (1) knowledge of a substantial risk and (2) conscious disregard, plaintiffs must show (3) conduct that is "more than . . . negligen[t]." *Wade*, 67 F.4th at 1374. The panel, and many of the precedents the panel relied upon, articulated the third element of the test as speaking to a *mens rea* requirement, although by its terms it appears the panel was focused on conduct—*i.e.*, the *actus reus*.[3]

---

[3] The panel traced this three-part test to prior decisions like *Adams v. Poag*, 61 F.3d 1537 (11th Cir. 1995), *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999), and *Cottrell v. Caldwell*, 85 F.3d 1480 (11th Cir. 1996). *See Wade*, 67 F.4th at 1371. The first decision to formalize a three-part deliberate indifference test with a "more than negligent" element appears to be *McElligott*, which amalgamated language from *Estelle* with the two-part test from *Farmer*. 182 F.3d at 1254-55. But the snippet of *Estelle* that *McElligott* relied on merely provided the Supreme Court's rationale for adopting a standard other than negligence (*i.e.*, deliberate indifference). It did not purport to define the deliberate indifference standard as such.

*Amici* respectfully suggest that this three-part formulation is confusing and counterproductive, and that the Court's prior precedents have misconstrued the Supreme Court's holdings in *Estelle* and *Farmer*. It is certainly true that the Supreme Court has stressed that proof of a subjective element is required before a plaintiff can establish liability under the Eighth Amendment, and that negligent conduct on its own does not suffice. That is why the Supreme Court required plaintiffs to establish that prison officials were *actually aware* of a substantial risk of serious harm, rather than merely showing that they *should* have been aware of such a risk. *Farmer*, 511 U.S. at 838. However, in disposing of the case before it, which involved inaction by prison officials to a risk of harm faced by a particular prisoner, the Supreme Court in *Farmer* remanded to determine what the prison officials *actually knew* about the plaintiff's risk of harm. *Id.* at 848-49. The Supreme Court did not raise any question about whether the disregard itself had the appropriate comparison to negligence of any degree.

This Court's insertion of an additional element that requires judges to compare conduct to (potentially varying) degrees of negligence finds no support in *Farmer*, *Estelle*, or any of the Supreme Court's Eighth

Amendment precedents. And it has only served to sow confusion, as multiple decisions by this Court reflect. These decisions have differed over what is the precise *degree* of negligence against which the conduct must be compared, despite agreeing that there is a third element of the deliberate indifference test of some kind. For several reasons, *amici* urge the Court to abrogate this part of its deliberate indifference standard.

###    A.    The existing test is redundant at best.

The first problem with the three-part test for deliberate indifference is that the third part of the test is redundant. *See Smith v. Wood*, No. 20-12918, 2021 WL 4452526, at *3 (11th Cir. Sept. 29, 2021) (observing in an unpublished decision that the "third prong of our deliberate indifference test is somewhat redundant with the first"). Deliberately indifferent conduct necessarily is not "mere" negligent conduct. But the legal definition should focus on what deliberate indifference *is* rather than what it is not.

Of course, it is true that the deliberate indifference standard is more stringent than negligence in a general sense. Of the universe of official conduct causing harm in prisons, only some of that conduct is negligent, still less is deliberately indifferent, and still less represents

"acts or omissions for the very purpose of causing harm or with knowledge that harm will result"—a showing the Supreme Court has expressly held is not required to establish a claim under the Eighth Amendment. *Farmer*, 511 U.S. at 835. In *Farmer*, the Supreme Court described these states of mind as existing on a continuum of moral "blameworth[iness]," with negligence the least blameworthy, intentional conduct the most blameworthy, and deliberate indifference somewhere in the middle. *Id*. But that typology does not mean it makes sense to *define* deliberate indifference with reference to these other concepts, and *Farmer* itself did not purport to do so.

Instead, after observing that deliberate indifference lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other," the *Farmer* Court articulated the subjective recklessness test that has since been applied throughout the circuits. *Id*. at 836-38. That two-part test (knowledge and unreasonable disregard) sets out the standard for deliberate indifference. As an analytical matter, requiring a plaintiff to make a *further* showing of conduct that is more than negligent adds nothing to the inquiry.

**B.    The existing test is in tension with *Farmer*.**

To the extent it is not analytically redundant, the existing test appears contrary to law. The three-part formulation of deliberate indifference can be read to suggest that "merely" negligent conduct is not actionable even if undertaken with actual knowledge of an unreasonable risk. Indeed, the panel seemed to view the test that way here. *See Wade*, 67 F.4th at 1375 (concluding that conduct taken with knowledge and disregard of the risk was "likely more than *merely* negligent" but did not violate the Constitution because it "was not more than grossly negligent"). As explained below, this reading clashes with the criminal recklessness standard and should be rejected.

*Farmer* makes clear that what distinguishes (actionable) deliberate indifference from (non-actionable) negligence is not the degree of riskiness of the conduct but rather the actor's subjective awareness of the risk posed by his conduct. 511 U.S. at 838. This makes sense, because "deliberate indifference serves under the Eighth Amendment to ensure that only inflictions of punishment carry liability." *Id*. at 841 (citing *Wilson v. Seiter*, 501 U.S. 294, 299-300 (1991)). As Justice Scalia explained in *Wilson*, *Estelle* and its progeny teach that punishment is

determined through an "inquiry into a prison official's state of mind." 501 U.S. at 298-99. That inquiry turns on subjective awareness of the risk, not whether the conduct was "merely negligent," "grossly negligent," or something else. *Cf. Counterman v. Colorado*, 600 U.S. 66, 79 (2023) (noting in the First Amendment true-threats context that a recklessness standard targets "morally culpable conduct" involving a "deliberate decision to endanger another" through "insufficient concern with risk").

This approach to deliberate indifference tracks the Model Penal Code, which *Farmer* relied on in articulating the deliberate indifference standard. 511 U.S. at 839. As shown below, the Model Penal Code's definitions of recklessness and negligence are substantively identical except for the *mens rea* requirement:

> Recklessly: A person acts recklessly with respect to a material element of an offense when he ***consciously disregards*** a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.

> Negligently: A person acts negligently with respect to a material element of an offense when he ***should be aware*** of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must

> be of such a nature and degree that the actor's failure to perceive it, considering the nature and purpose of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

Model Penal Code § 2.02(2)(c)-(d) (emphasis added). Notably, while the Model Penal Code requires different levels of subjective knowledge for these two concepts, both definitions use the same objective standard for the standard of care. *Id.*[4]

Subsequent decisions from the Supreme Court bolster this conclusion. In *Borden v. United States*, for example, the Court explained that "a person acts recklessly, in the most common formulation, when he 'consciously disregards a substantial and unjustifiable risk' attached to his conduct, in 'gross deviation' from accepted standards." 141 S. Ct. 1817, 1824 (2021). By contrast, "a person acts negligently if he is not but 'should be aware' of such a 'substantial and unjustifiable risk,' again in 'gross deviation' from the norm." *Id.* Consistent with the Model Penal Code definitions, the Supreme Court did not suggest that criminal

---

[4] It is also notable that the Model Penal Code does not contain an intermediate definition of "gross negligence" in articulating the various mental states that may give rise to criminal liability. *See Government of Virgin Islands v. Scuito*, 623 F.2d 869, 872 n.7 (3d Cir. 1980).

recklessness required a greater deviation from accepted standards than negligence. The difference instead lay with the subjective level of "concern with a risk of injury." *Id.*; *see also Voisine v. United States*, 579 U.S. 686, 691 (2016) (stating that the key feature of recklessness is conscious disregard of a substantial risk of harm, and citing *Farmer*).

Likewise, in *Global-Tech Appliances, Inc. v. SEB S.A.*, the Supreme Court held that "a reckless defendant is one who merely knows of a substantial and unjustified risk of such wrongdoing, . . . and a negligent defendant is one who should have known of a *similar risk* but, in fact, did not." 563 U.S. 754, 770 (2011) (emphasis added). These decisions interpreted the same Model Penal Code sections as *Farmer* and focused on the requisite knowledge of risk—not conduct or objective riskiness—as the key feature distinguishing criminal recklessness from negligence.

In fact, in a similar context, this Court itself recently acknowledged that an actor's awareness of the risk is the critical distinction between recklessness and negligence. As the Court explained, recklessness differs from negligence "in that recklessness incorporates the defendant's awareness of the risk created by his conduct," but recklessness "*does not* require a more extreme derogation of the defendant's duty of care."

-17-

*United States v. Alvarez*, 809 F. App'x 562, 571 (11th Cir. 2020) (cleaned up and emphasis added). Although *Alvarez* concerned the Sentencing Guidelines, in reaching this conclusion the opinion stressed that the Guidelines' definition of recklessness was "consistent both with the Model Penal Code and leading treatises on criminal law." *Id*. Again, those are the sources *Farmer* used as the predicate for its constitutional rule.

### C.    The existing test is unnecessarily confusing.

Requiring plaintiffs to prove "more than negligent" conduct to establish deliberate indifference is also likely to lead to inconsistent and unpredictable outcomes. As *Farmer* recognized, the standard of "gross negligence" is inherently "nebulous." 511 U.S. at 836 n.4. Commentators too have emphasized that the term "gross negligence" "does not give any clue as to whether it is greater riskiness or subjective realization of risk or both which goes into the word 'gross.'" Wayne R. LaFave, 1 *Substantive Criminal Law* § 5.4 (3d ed. 2023); *see also id*. § 5.4(b) (similar). The slipperiness of the concept virtually guarantees that the existing test will lead to inconsistent results in practice.

Nor is there anything to be gained from parsing the issue this finely. In *Farmer*, the Supreme Court stated that gross negligence

"typically" is "little different from [civil] recklessness," which the Court understood to mean an act or failure to act "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." 511 U.S. at 836 n.4. But as discussed above, the first element of the deliberate indifference test already makes clear that deliberate indifference requires more than that the defendant "should have known" of a risk of harm posed by the defendant's conduct. *See* Part I *supra*.

   If a plaintiff must show more than "mere negligence," moreover, in practice that will mean either that the plaintiff must show recklessness or that gross negligence is required to make out a viable claim. Thus, framing the third element as requiring "more than mere negligence" as opposed to "gross negligence" does not fix the problem. A "more than mere negligence" approach either is redundant of the first two steps or shifts the uncertainty over "gross negligence" to the other side of the ledger.

   Last, while this appeal arises at summary judgment, it is important to recognize that a "more than negligent" step three will be extremely difficult for jurors to understand and apply. *See Farmer*, 511 U.S. at 843 n.8 (noting the importance of accurate jury instructions in deliberate indifference cases). Indeed, the standard is likely to bedevil lay jurors

-19-

even more than it has bedeviled courts. Tellingly, the pattern jury instructions attempt to sidestep the difficulty entirely, seeking to "avoid the issue of whether more than mere or more than gross negligence is required." *Eleventh Circuit Pattern Jury Instrs., Civil Cases* § 5.8 cmt. 2 (Mar. 2022 rev.). The current pattern instructions simply offer a host of factors, like the seriousness of the injury or the reasons for any delay, that "the jury can consider in determining whether a defendant was deliberately indifferent." *Id*. This suggests that the standard that juries actually apply in the Eleventh Circuit is a subjective awareness standard combined with an ordinary reasonableness test, consistent with the standard *amici* urge here.

## III.  Abrogating the existing test is consistent with real-world prison practices and would not implicate reliance interests.

In addition to its doctrinal flaws, this Court's three-step test for deliberate indifference is out of step with real-world practice. *Amici* have extensive backgrounds training and supervising prison staff in correctional systems throughout the country. In their experience, neither prison administrators nor prison staff understand the Constitution to sanction deliberate indifference that is "merely negligent" or even "grossly negligent." Prison administrators educate correctional staff to

take reasonable action when staff are informed about a risk to an inmate's health or safety—awareness of the risk is what triggers the obligation to act reasonably under the circumstances.

For example, when correctional staff are informed that an inmate has a medical issue, they are trained and expected to refer the inmate to medical staff so that they can assess the situation to determine whether treatment is warranted. *See, e.g.,* B. Jaye Anno, *Correctional Health Care: Guidelines for the Management of an Adequate Delivery System*, U.S. DEP'T OF JUSTICE, NAT'L INST. OF CORR. 49 (2001 ed.), *available at* https://nicic.gov/resources/nic-library/all-library-items/correctional-health-care-guidelines-management-adequate (last visited Nov. 24, 2023) ("[u]niformed or law staff may convey sick call requests, but they may not decide which prisoners will receive medical attention").

Similarly, most prison systems have clear policies that provide instruction to correctional staff about what they must do when an inmate reports that he or she fears an assault by another inmate. The Oklahoma Department of Corrections, for example, requires that staff take multiple specified actions (including a documented investigation) when an inmate makes a request for protective measures, whether verbally or in writing.

Okla. Dep't of Corr., OP-060106, *Non-Associations and Protective Measures* (Mar. 30, 2022), *available at* https://oklahoma.gov/content/dam/ok/en/doc/documents/policy/section-06/op060106.pdf (last visited Nov. 27, 2023). The Indiana Department of Correction similarly mandates that when an inmate requests protective custody, the staff member receiving the request must assist the inmate in completing the necessary paperwork and contacting the designated operational staff to gain access. Ind. Dep't of Corr., Pol'y No. 02-01-107, *The Use and Operation of Protective Custody* (Aug. 1, 2018), *available at* https://www.in.gov/idoc/files/02-01-107-Protective-Custody-8-1-2018.pdf (last visited Nov. 27, 2023). And the Colorado Department of Corrections requires correctional staff to refer an inmate requesting protective custody to senior-level staff for an interview to determine if protective custody is appropriate. Colo. Dep't of Corr., Admin. Reg. No. 650-02, *Protective Custody* (Nov. 15, 2023), *available at* https://cdoc.colorado.gov/about/department-policies (last visited Nov. 27, 2023).

Lastly, the U.S. Department of Justice's National Standards to Prevent, Detect, and Respond to Prison Rape Under the Prison Rape Elimination Act (PREA) require prison systems to adopt policies

mandating that a report of sexual abuse or harassment is referred for investigation, and to provide training to correctional staff about those policies. 28 C.F.R. §§ 115.22, 115.31. In *amici*'s experience, correctional systems have largely complied with these standards, requiring correctional staff to refer any report of sexual harassment or abuse to the system's internal affairs department or similar investigative agency.

The policies and training referenced above set out clear instructions for correctional staff to take specified actions when a potential risk of harm to an inmate is made known to them. They do not permit inaction so long as the inaction is merely negligent, or grossly negligent, in character. A policy that provided such permission would endanger staff and inmates alike and provide no clear guidelines by which to guide and evaluate staff conduct.

Accordingly, in *amici*'s view, adopting the deliberate indifference test set out by *Farmer* and eliminating the "more than negligent" element from the legal framework will have no meaningful impact on the actual operations of the correctional systems within this Circuit. Nor will it upset correctional administration, which already trains and instructs correctional staff to respond to known risks to health and safety. To the

contrary, *amici* expect that adoption of the test articulated in *Farmer* will lead to a greater degree of consistency in lawsuits brought by inmates against prison staff by encouraging courts and juries to focus on two straightforward and easily understandable questions rather than a comparison between abstract legal concepts. This too weighs in favor of correcting the legal test. *See Corporación AIC, SA v. Hidroeléctrica Santa Rita S.A.*, 66 F.4th 876, 888-89 (11th Cir. 2023) (en banc) (explaining the role of reliance interests in deciding whether to overrule precedent).

Correctional systems function best when clear expectations of both inmates and correctional staff are communicated, allowing correctional administrators and staff to ensure consistency and fulfill their mission to maximize the safety of all involved. Rather than depending on the inherently subjective view of a judge or jury evaluating whether the conduct at issue exceeded an ill-defined, nebulous threshold, applying the *Farmer* test will allow courts in this Circuit to have clear guidelines focused on the knowledge of the correctional staff and the adequacy of conduct taken, or not taken, in response.

**IV.  The Court should re-evaluate summary judgment in this case using the appropriate legal framework.**

Although a "more than negligent" framework for deliberate indifference is analytically flawed, that does not mean that the objective reasonableness of a defendant's conduct plays no role in the analysis. Even though there is no freestanding "more than negligent" element to deliberate indifference, prison officials are not liable under the Eighth Amendment if "they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844-85; *see also Doe v. Welborn,* 110 F.3d 520, 524 (7th Cir. 1997) (explaining that the reasonable-response prong of *Farmer* is simply "another way of saying that a plaintiff has the burden of proving the subjective (knowing disregard) component of the test elaborated in *Farmer*"); *supra* p. 9. Therefore, rather than asking whether each defendant's conduct was more than merely negligent or more than grossly negligent, as the panel did here, under the correct standard the panel should have asked whether each defendant's conduct was taken in knowing disregard of an unreasonable risk of harm.

For example, if Nurse Harrell and Nurse Lee arguably (1) knew that David Henegar was not getting his anti-seizure medicine and

(2) "disregarded th[e] risk" of this serious health concern by failing to "attempt[] to order or obtain backup Dilantin"—as the panel found, *Wade*, 67 F.4th at 1375—the question would be whether it was reasonable for Nurse Harrell and Nurse Lee to merely "check[]" that Mr. Henegar's medicine "would be arriving soon" as it was "on order." *Id*. at 1376. In making this assessment, a fact finder would not ask whether Nurse Harrell and Nurse Lee acted with gross negligence versus mere negligence. A fact finder would simply ask whether a reasonable person would have been satisfied that the medication was "on order" where the nurses "knew about the backup Dilantin supply, had access to it, and had the ability to order medications." *Id*. at 1375.

At summary judgment, of course, the relevant question is not whether defendants actually were deliberately indifferent, but whether the direct and circumstantial evidence is such that it is "open to a jury" to infer that the defendant's response was unreasonable, given the risks of which the defendant was aware. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158 (1970). "[W]here evidence exists that the defendants knew better than to make the medical decisions that they did, a jury should decide whether or not the defendants were actually ignorant to risk of the harm

that they caused." *Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016) (en banc). *Amici* express no view on whether the record viewed in the light most favorable to the plaintiff can support an inference that one or more defendants responded unreasonably to a known risk in this case. However, *amici* urge the Court to reconsider this question in light of the foregoing principles rather than the gross negligence versus mere negligence framework the panel applied.

## CONCLUSION

The Court should abrogate its three-part test for deliberate indifference and adopt the test set forth in *Farmer*.

Dated: November 29, 2023                Respectfully submitted,

                                        /s/ Sarah Grady
                                        Sarah Grady
                                        *Counsel for Amici Curiae*

Sarah Grady*
Jed W. Glickstein
KAPLAN & GRADY LLC
2071 N. Southport Ave.
Suite 205
Chicago, Illinois 60614
(312) 852-2184
sarah@kaplangrady.com
jglickstein@kaplangrady.com

*Counsel of Record*

## CERTIFICATE OF COMPLIANCE

I, Sarah Grady, hereby certify that the En Banc Brief of Former Correctional Administrators as *Amici Curiae* in Support of Neither Party complies with the type-volume limitations of Federal Rule of Appellate Procedure 29(a)(5) because it contains 5,368 words, excluding the portions of the response exempted by Federal Rule of Appellate Procedure 32(f). In preparing this certificate, I relied on the word count tool of the word-processing system used to prepare the brief, Microsoft Word 365.

I further certify that the response complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(2) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Century Schoolbook 14-point font.

Respectfully submitted,

/s/ Sarah Grady
Sarah Grady
*Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I, Sarah Grady, hereby certify that I served the En Banc Brief of Former Correctional Administrators as *Amici Curiae* in Support of Neither Party on November 29, 2023 using the CM/ECF system, which effected service on counsel of record for all parties.


Respectfully submitted,


/s/ Sarah Grady
Sarah Grady
*Counsel for Amici Curiae*